Alex LeRoy NELSON, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12180.

Criminal Court of Appeals of Oklahoma.

Sept. 21, 1955.

432

Coffey & Coffey, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

The plaintiff in error, Alex LeRoy Nelson, defendant below, was charged in the District Court of Tulsa County, Oklahoma, by information, for the crime of manslaughter in the first degree. Specifically, it was alleged that, while driving his automobile, on December 11, 1953, at a high, dangerous, and reckless rate of speed, under the then existing circumstances, to-wit, 40 to 45 miles per hour and, while under the influence of intoxicating liquor and, while failing to stop at a stop signal at an intersection at 15th Street and Peoria Avenue, in the City of Tulsa, Oklahoma, he did propel the same into the intersection, and against the side of a Pontiac automobile, then occupied by Thomas James Hardman, Jr., thereby inflicting certain mortal wounds upon the body of the said Hardman, from which wounds the said Hardman did languish and die, contrary to statutes in such cases made and provided. The defendant was tried by a jury, convicted, and the jury being unable to agree upon the punishment, and so stating in its verdict, left the same to be fixed by the trial court. The trial court set said punishment at four years in the State Penitentiary, at McAlester, Oklahoma, and entered judgment and sentence accordingly, from which this appeal has been perfected.

The defendant herein urges that the information is insufficient to charge an offense under the statutes, and was likewise insufficient to inform the accused of the nature of the offense sought to be charged against him.

The charge herein alleged, was brought under the provisions of T. 21, § 711, O.S.1951, defining manslaughter in the following terms:

"Homicide is manslaughter in the first degree in the following cases:

"1. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor."

The charging part of the information alleged defendant caused the death of deceased as the result of the commission of certain misdemeanors, to-wit:

"1. '* * * while driving and operating an automobile in a westerly direction on 15th Street, near the inter-

section of Peoria Street in the City of Tulsa, * * * at a high, dangerous, and reckless rate of speed, for the then existing circumstances, to-wit, 40 to 45 miles per hour.' (T. 47, § 121.3, O.S. 1951, as amended in the 1953 statutes.)

"2. '* * * and while driving the said automobile the said defendant was driving and operating the automobile while under the influence of intoxicating liquor.' (T. 47, § 93, O.S.1951, as amended in the 1953 statutes.)

"3. '* *. * and did fail to stop at a stop signal at the intersection of 15th Street and Peoria Avenue, in the City of Tulsa, * * *.' (T. 47, § 125.4, O.S. 1951, as amended in the 1953 statutes.)"

The defendant contends that "each of the separate misdemeanors upon which the charge of manslaughter is predicated, should be alleged in a manner so that each will be complete unto itself", and urges that "a deficiency in one, results in the insufficiency of all, else we have only garbled language, as in this case." An examination of the foregoing charging part of the information discloses that the information of course could have been more detailed in its allegations but we are of the opinion that it meets the principles of law hereinafter set forth. In Holleman v. State, 74 Okl.Cr. 258, 125 P.2d 239, 242, quoting from Price v. State, 9 Okl.Cr. 359, 131 P. 1102, it was said:

"We think the reasoning of Judge Furman in disposing of a similar contention in Price v. State, supra (9 Okl. Cr. 359, 131 P. [1102] 1104), is applicable herein. It was there stated:

"'Under the old common-law doctrine of strictly construing criminal law and all proceedings in criminal cases, and that an indictment or information should be certain to a certain intent in every particular, the objection now urged to this information would undoubtedly be good. But these doctrines have long since been repudiated in the state of Oklahoma. It is true that an indictment should be reasonably certain as to the offense charged in order that the defendant may not be surprised and may be able to prepare to make his defense, and also to enable him to plead a judgment of acquittal or conviction in bar to a subsequent prosecution for the same offense. This is all that a defendant is in reason and justice entitled to. If an indictment is couched in such language as to enable a person of common understanding to know what is intended, it is all that the law requires.'"

In Coslow v. State, 83 Okl.Cr. 378, 177 P.2d 518, 520, the late Judge Barefoot, speaking for the court, said:

"This court has never applied strict rules of construction in passing upon the terms of an indictment or information. * * *"

We are of the opinion that the information herein states the charge with that degree of certainty which enables the defendant to know what was intended, and to acquaint him with the offense of which he stood charged. Moreover, it was sufficient to enable the court to pronounce judgment upon the conviction. Furthermore, it is sufficiently definite and certain as to stand as a bar against a second prosecution for the same offense, if the defendant should be convicted thereon, Coslow v. State, supra.

Next, the defendant urges the evidence was insufficient to sustain the jury's verdict, and that the trial court erred in overruling his demurrer to the evidence. The facts established from the state's case, that the decedent, Hardman, sixteen years of age, was driving the automobile in which he was riding, accompanied by Lynn Barrett II, fifteen years of age. The Hardman boy had been driving only eight months. The Barrett boy testified they were driving south on Peoria Street, in Tulsa, Oklahoma, at about 50 yards from the intersection; the traffic light was red; about 50 feet from the intersection the light changed to green. Barrett related they were going 15 miles an hour at that time. After the light changed to green, the speed of the automobile was accelerated. He further stated he looked to the east side of the street, after seeing the light was red, and his vision was fixed on the Crosstown Grill, an eating establish-

ment where young people congregated. He expected to see someone there whom he knew; this distracted his attention from the traffic signal. He first testified defendant's automobile was traveling 45 to 50 miles per hour, then changed his evidence to the effect that he saw the said automobile only three or four split seconds before the crash, and he did not really know how fast it was going.

Mr. and Mrs. Fryhover, disinterested witnesses, said they came from the Crosstown Grill. Mr. Fryhover related that he first looked at the lights at the time of the collision; the light on Peoria Street was green, and on 15th street, it was red; the Hardman automobile was going 15 miles per hour and the defendant's about 35 miles per hour. It is apparent he did not see the lights before the cars hit, for he testified "* * * at the time the cars hit, of course, we looked at the lights."

Mrs. Fryhover testified that she observed the two automobiles as her husband did, and that the car going west on 15th Street was moving against a red light, and it occurred to her he would not be able to stop for the light.

The defendant testified the light on 15th Street was green when he went into the intersection; all of a sudden the other car was in front of him. There were no other eyewitnesses. It thus appears there was a strong conflict as to who was in the intersection first and had the green light.

■ On the question of intoxication, there is likewise a strong conflict. The police officer, who covered the accident, and the police secretary, as well as the Barrett boy, testified the defendant was drunk. The defendant, his lady friend, and several other reputable persons who saw the defendant, testified he was not drunk. On this point, the defendant admitted drinking some beer during the course of the evening. The accident occurred at about 11:50 o'clock, P. M. On the motion for new trial, the trial judge found the evidence did not support the charge that the defendant was under the influence of intoxicating liquor. But this question, as were those of reckless driving, and running the red traf-

fic light, was a question for the sole determination of the jury. Stuart v. State, Okl. Cr., 280 P.2d 755; Dodson v. State, Okl.Cr., 284 P.2d 437. We are of the opinion that the evidence substantially supports the charges in the information.

■ Another proposition urged by the defendant is, that police court methods of prosecution deprived the accused of a fair and impartial trial in a court of record. The state's attorney was assisted in this prosecution by a special prosecutor. The record discloses that on cross-examination of the defendant, the following things occurred:

"Mr. Coffey: And he is harassing the witness, badgering him.

"Mr. Hickman: I am not badgering the witness, however, I will ask something that will do that. You've been convicted of various crimes, haven't you?

"Mr. Coffey: Just a minute, just a minute.

"Mr. Hickman: Very well, I will be specific.

"Mr. Coffey: Now, just one minute.

"Mr. Hickman: Were you not convicted of a sex offense in Los Angeles?"

After some considerable discussion at the bench with the court, the special prosecutor continued interrogating the defendant concerning previous convictions in California, and finally succeeded in getting an admission from the defendant that he had been previously convicted in California on a charge of vagrancy, for which he paid a fine. The record does not disclose that the court at any time admonished the jury to disregard the question in relation to the supposed sex crime conviction allegedly had in California, and no proof was offered in support of the supposed conviction. In the absence of such proof, we must conclude that the same was asked for the purpose of degrading, or intimidating the defendant, and for the purpose of prejudicing the jury against the defendant.

■ In Hutchinson v. State, Okl.Cr., 274 P.2d 74, 83, quoting from Watson v.

State, 7 Okl.Cr. 590, 124 P. 1101, this court said:

" 'When the record discloses that counsel for the state, in the prosecution of a person charged with crime, has been guilty of conduct calculated to arouse the prejudice or passion of the jury and prevent the accused from having a fair and impartial trial, a conviction had should be set aside by the trial court, and a new trial awarded.

\* \* \* \* \* \*

" 'In jury trials, incalculable harm is often done by counsel in asking known incompetent questions in the hearing of the jury and thereby forcing the adverse party to object to them also in the hearing of the jury, which manifests a fear of the incompetent questions, and gives emphasis to the harmful matter they are supposed to contain.' "

Further, quoting from Scott v. State, 13 Okl.Cr. 225, 163 P. 553, we said:

" 'Improper cross-examination which clearly discloses the purpose of counsel for the state to degrade or to intimidate a defendant who has the stand as a witness, and which is calculated to prejudice the jury and serves no other purpose, constitutes reversible error.' "

■■ The defendant's next proposition relates to the admission of an extrajudicial statement in which the defendant admitted that he was driving the automobile which collided with the Hardman automobile. He contends that there was no evidence to establish the defendant was driving one of the automobiles involved in the collision, except for his admission contained in such statement. He contends that this statement was inadmissible for this purpose. There is no question but that the record is weak in this regard. Nevertheless, we are of the opinion that, the circumstances involved surrounding the accident were sufficient to establish that the defendant was driving the automobile in question. If positive evidence on this point is available, it should be offered at the new trial. Furthermore, the defendant objects to the introduction in the evidence of some photographs taken by John Engler, a professional photographer, at the scene of the tragedy. Officer Duncan testified to the fact that the pictures were a true representation of conditions immediately following the tragedy. We are of the opinion this was sufficient. In Cooper v. State, 61 Okl.Cr. 318, 67 P.2d 981, 982, we said:

"When a photograph is shown to be a faithful reproduction of whatever it purports to reproduce, it is admissible in evidence, as an appropriate aid to the jury in applying the evidence and this is equally true whether it relates to persons, things, or places."

In the body of the opinion, 61 Okl.Cr. at page 320, 67 P.2d at page 983, the Court said:

" \* \* \* Early in the history of this court it was held that photographs were admissible, and their admission was a matter addressed to the discretion of the trial court, under the circumstances of each particular case. See Morris v. Territory, 1 Okl.Cr. 617, 99 P. 760, 101 P. 111; Morris v. State, 6 Okl.Cr. 29, 115 P. 1030, 1032."

■ The defendant also urges that the trial court's instruction No. 4 was erroneous in that it informed the jury that one who did not stop when the traffic signal is red, and remain until green, or go, was guilty of a misdemeanor, T. 47, § 125.5, and § 125.17, O.S.1951, as amended in the 1953 statutes, making a failure to observe said signals a misdemeanor. This provision, he contends, by virtue of instruction No. 4, brought in issue the constitutionality of the provisions of the Act as it relates to motor vehicle operators, and their duty to observe such stop and go devices and signals, which regulations, he contends, are void. This contention is predicated upon the provisions of § 57, Art. 5, of the Oklahoma Constitution, to the effect that:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended,

or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is re-vived, amended, extended, or conferred shall be re-enacted. and published at length: Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

Under the provisions of § 125.5, subsection (c)(1):

"(1) Vehicular traffic facing the signal, shall stop before entering the cross-walk on the near side of the intersection; or, if none, then before entering the intersection and shall re-main standing until green or 'Go' is shown alone."

The title of this Act reads as follows:

"An Act relating to traffic on public streets and highways; authorizing the State Highway Commission to adopt a manual and specifications for uni-form traffic control devices; provid-ing for the erection and maintenance of such traffic control devices; es-tablishing a traffic control signal legend for use on said highways; prohibiting the display or erection of unauthorized signs, signals, markings, or devices upon or in view of such highways, pro-hibiting the interference with or re-moval of official traffic control devices or signs; prescribing rights and duties of pedestrians using streets and high-ways and defining powers of local au-thorities in connection therewith; pre-scribing penalties for the violation of the provisions of this Act." 47 O.S. Supp. § 125.1 note.

This court has passed squarely upon such a question. In In re Powell, 6 Okl.Cr. 495, 120 P. 1022, wherein it was urged there was a defect in the title of the juvenile court law, by reason of omission of certain details, analogous to the situation herein involved. Therein, this court said:

"(a) It is not necessary for the title to an act of the Legislature to embrace an abstract of its contents. It is suf-ficient, if the title contains a reason-able intimation of the matters under legislative consideration, to state the subject of the bill in general terms, and with fewest words, in accordance with the general custom to which the framers of the Constitution intended the Legislature to conform.

"(b) When there are numerous pro-visions having one general object, the title is sufficient if it fairly indicates the general purpose of the act. The de-tails providing for the accomplishment of such purpose are to be regarded as necessary incidents.

"(c) All the provisions of this act are for one object only—the care of delinquent and dependent children, as expressed in the title."

Likewise, in the case at bar, the Act herein involved had but one object only; traffic on public streets and highways, traffic control devices in public streets and highways, and their use in conformity to traffic control devices, etc. The fact that the title does not contain specific reference to the opera-tion of motor vehicles does not render it void, since it contains a reasonable intima-tion of the matters under legislative consid-eration, and, as was said in In re Powell, supra, " 'the details providing for the ac-complishment of that purpose will be re-garded as necessary incidents.' " More-over, as was said in Shaw v. State, 76 Okl. Cr. 271, 134 P.2d 999, 1003, 138 P.2d 136:

"If by any fair intendment the pro-visions in the body of an act have a necessary and proper connection with the title, and are not incongruous with the title, or without proper connection or relation therewith they are suffi-ciently covered by the title.

"The term 'subjects' as used in Ar-ticle 5, Section 57, of the Oklahoma Constitution to the effect that 'Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title,' is to be given a broad and extensive meaning so as to allow the legislature full scope to in-clude in one act all matters having a logical or natural connection."

We are of the opinion that, under the foregoing rules of construction, the act herein involved, T. 47, § 125.1 and § 125.17, O.S.1951, as amended by the 1953 statutes, is not void on account of defective title.

Further, the defendant contends that the provisions of § 125.1 and § 125.17 constitute no part of the Criminal Code of this statute, because the provisions of the Act, in relation to traffic signals, etc., and failure to observe them, do not specifically make the doing of any prohibited act a "violation, or a crime". This contention is predicated upon the provisions of § 125.17, which reads as follows:

"It is a misdemeanor for any person to violate any of the provisions of this Act, and every person convicted of such violation shall be punished by a fine of not more than Fifty ($50.00) Dollars, or imprisonment in the county jail for a period of not more than 30 days, or by both such fine and imprisonment. Nothing in this Act shall be construed to be a violation or a crime except those specifically made so by this Act, and the violation of the manual and the specifications, shall not be an offense. Laws 1953, p. 349, § 17."

He contends that the last sentence of the foregoing section is incapable of understanding. He urges that the penalty provisions of § 125.17 is a general, and not a specific provision, and that therefore there is nothing in the statutes which specifically makes the doing of any prohibited act a violation or a crime, and that under these conditions it is clear that the Legislature never intended that every act of omission, or commission, under this statute, should be punishable as a crime, and that there cannot conceivably be any reason for the court to say that the violation of the provisions of T. 47, §§ 125.1 to 125.16, inclusive, O.S.1951, as amended in the 1953 statutes, or any one of them, is a misdemeanor. The provisions of § 125.17 must be construed in light of certain rules of construction. In Ex parte Barnett, 96 Okl.Cr. 254, 252 P.2d 496, at page 501, this court said:

"To ascertain the intention of the Legislature in the enactment of the

statute, the court may look to each part of the statute, to other statutes upon the same subject, to the evils and mischiefs to be remedied, and to the natural or absurd consequences of any particular interpretation. Blevins v. W. A. Graham Co., 72 Okl. 308, 182 P. 247."

To the same effect is Landrum v. State, 96 Okl.Cr. 356, 255 P.2d 525; Pierro v. Turner, 95 Okl.Cr. 425, 247 P.2d 291. In Brown v. State Election Board, 197 Okl. 169, 170 P.2d 200, 202, the Supreme Court of the State said, in construing the statutes:

"'A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubt upon that score.' 11 Am.Jur. 730.

"Another rule of construction is that where a statute is ambiguous or the literal meaning would lead to absurd consequences which the Legislature probably did not contemplate, the courts must presume that such consequences were not intended and should adopt a construction that is reasonable and that will avoid the absurdity. Taylor v. Langley, 188 Okl. 646, 112 P.2d 411; West's Okl.Dig., Statutes ⬯181(2); 50 Am.Jur. 372, § 368."

In Taylor v. Langley, 188 Okl. 646, 112 P. 2d 411, 415, similarly the Supreme Court adopted the same rule in construing statutes and, in addition thereto, said:

"* * * courts are bound * * * to adopt a construction which will promote the ends of justice and avoid the absurdity."

It is obvious that the provisions of § 125.17 are ambiguous, and that a literal interpretation of the last sentence included therein would lead to absurd consequences, which we do not believe the Legislature contemplated. Moreover, it is our duty to adopt a construction that is reasonable, and that will avoid the absurdity. With these rules of construction in mind, it is our belief that the Legislature, as expressed in the first line of § 125.17, though a general provision, intended to penalize the violation of the provisions contained in the Act, relating

to traffic control signals, and the requirements of obedience thereto. We cannot believe that they would provide a penalty for the violation of traffic control signals, and then in the very next line, intentionally negative these provisions by providing that nothing in the Act could be construed to be a violation, or a crime, except those specifically made so by this Act. This provision is irreconcilable with the penal provisions which immediately preceded the same.

We are of the opinion that it was the intention of the Legislature to prevent the manual and the specifications which the Act provides in § 125.1 may be prescribed by the State Highway Commission from being construed to be a violation, or a crime. We do not believe that said provision was intended to negative the penal provisions set forth in § 125.17 in relation to a violation of the traffic control signals.

We are of the opinion that provisions of the last line of § 125.17 constitute an inaptly worded provision in relation to the manual and specifications to be prescribed by the Highway Commission, and it was an attempt to prohibit the Highway Commission from invading the legislative function by attempting to prescribe provisions of the Criminal Code; and we so hold. We believe that this interpretation is in keeping with the rule of construction that the intention, or purpose, of the Legislature should not be ascertained, from any single part, portion, or section, or from isolated, or particular portions, provisions, clauses, sentences, words, or phrases, or from particular expressions, or terms, or from partial recitals, but from a general consideration, or viewpoint of the Act as a whole, or in its entirety. Ex parte Higgs, 97 Okl.Cr. 338, 263 P.2d 752, 753.

Furthermore, we believe that this interpretation is in keeping with a further rule of construction that, "where an expression in a particular clause is not so definite in its import as those used in other parts of the statute, and real intention of lawmaking power can be collected from definite and extensive expressions used in other parts of the same statute, a construction should be adopted that will give effect to definite expressions used, unless such construction contravenes some other potent provision of law." Ex parte Higgs, supra.

Furthermore, there is nothing ambiguous in the questioned provisions of the statute involved, except the last line of § 125.17. Certainly, that provision is ambiguous and is the only part of the Act as applied to the facts herein, where ambiguity may be said to be involved. An ambiguous statute calls for resort to every source of interpretive assistance and rules of statutory construction are intended as an aid to resolve doubts, and not to create them. Ex parte Higgs, supra. Rules of construction of statutes would be applicable only to that section herein involved, to which ambiguity pertains, and that is the last line of § 125.17, O.S.1951, as amended by the Act of 1953.

Believing that it was not the intention of the Legislature to do a vain thing, we are therefore forced to the conclusion that the last line of § 125.17 has application only to the manual and specifications to be prescribed by the Highway Commission. The statute in question is therefore not unconstitutional and void.

Finally, defendant contends that the court should have instructed on the law in accordance with his requested instructions. This has relation particularly to requested instructions No. 6 and No. 7. Defendant's defense was predicated upon the proposition that young Hardman, and Barrett, were not operating the automobile with due regard for their own safety. The Barrett boy testified that immediately before they went into the intersection, he was looking across the street at the Crosstown Bar to see if he could observe some of their associates, who sometimes frequented that place; that his own evidence indicated they might not have been operating the automobile in which they were riding with that degree of care conducive to their own safety, as well as the safety of others. Such is the crux of the defendant's defense in the case at bar, and he was entitled to have an instruction covering this theory of defense of an accidental killing. The court's failure to instruct, on this theory, deprived the accused of a valuable right. If the decedent's fail-

ure to exercise reasonable care and caution for his own safety was the proximate cause of his death, then, in that event, the defendant would not be liable.

The defendant further contends that the court's instruction on an excusable homicide, in the language of the statutes, does not affirmatively present his defense of accidental homicide. We are of the opinion that such is the case. The defendant offered instructions No. 6 and No. 7, which he admits were possibly subject to criticism, but, nevertheless, it was sufficient to call the trial court's attention to the nature and theory of his defense. We have searched the instructions and do not find any instruction covering this theory of defense. We are of the opinion that:

"It is the duty of the court to instruct the jury from both the standpoint of the state and the defendant; and the defendant had the right to have a clear affirmative charge based upon the hypothesis that his testimony and the testimony of his witnesses was true, when this testimony affects a material issue in the case.

"If the instructions submitted appear to the court not to be in proper form, or fully or correctly state the issues, still, if the instructions submitted are sufficient to call the court's attention to the material issue raised and which has a basis of support in the evidence, it is the duty of the court to prepare and give a proper instruction on the issue thus presented to the court.

"The policy of the law is that all persons shall have a fair and impartial trial. It cannot be said that a fair and impartial trial has been had unless the jury have been properly instructed as to the law of the case; and where the instructions do not fully present all the material issues raised, the judgment of conviction will be set aside." Crossett v. State, 96 Okl.Cr. 209, 252 P.2d 150.

We are of the opinion that by reason of the prejudicial errors hereinbefore set forth, this case should be, and the same is hereby reversed and remanded for a new trial.

JONES, P. J., and POWELL, J., concur.