Dear Senator Price,
¶ 0 This office has received your request for an Attorney General Opinion in which you ask, in effect, the following question:
Pursuant to 37 O.S. Supp. 1996, § 521(J), does the OklahomaAlcoholic Beverage Laws Enforcement Commission have the authorityto issue a caterer's license to a business located in a countywhere the sale of alcoholic beverages by the individual drink isprohibited?
¶ 1 The Oklahoma Alcoholic Beverage Laws Enforcement Commission ("ABLE") is responsible for carrying out the purposes of the Oklahoma Alcoholic Beverage Control Act found at 37 O.S. 1991and Supp. 1996, §§ 501-599. 37 O.S. 1991, § 514[37-514](2). Generally, ABLE regulates all phases of "manufacturing, importing, exporting, transporting, storing, selling, distributing, and possessing for the purpose of sale" alcoholic beverages. 37 O.S.1991, § 514[37-514](1). This regulation includes the issuance of various types of alcoholic beverage control licenses. Your question relates to the issuance of one type of such license — the caterer license.
A. The Caterer License
¶ 2 Title 37 O.S. Supp. 1996, § 521[37-521](J) provides:
 A caterer license shall authorize the holder thereof: To sell mixed beverages for on-premises consumption incidental to the sale or distribution of food at particular functions, occasions, or events which are temporary in nature. A caterer license shall not be issued in lieu of a mixed beverage license. A caterer license shall only be issued in counties of this state where the sale of alcoholic beverages by the individual drink for on-premises consumption has been authorized. A separate license shall be required for each place of business.
37 O.S. Supp. 1996, § 521[37-521](J) (emphasis added).
¶ 3 The answer to your question depends upon the interpretation of the statute cited above. The fundamental principle of statutory construction is to ascertain the underlying legislative intent through an examination of the statute's language. See,e.g., Fuller v. Odom, 741 P.2d 449 (Okla. 1987). In construing a statute, the cardinal rule is to ascertain the intent of the Legislature by considering the language of the statute as a whole in light of its general purpose and objective. TXO ProductionCorporation v. Oklahoma Corporation Commission, 829 P.2d 964,968-969 (Okla. 1992). The intention and purpose of the Legislature should not be ascertained from any single, isolated clause or sentence, or from particular or partial recitals, but from a general consideration or viewpoint of the act as a whole.Nelson v. State, 288 P.2d 429, 437 (Okla.Crim.App. 1955). Accordingly, the above-cited statute must be interpreted by considering the specific words used therein in light of the purpose of the Oklahoma Alcoholic Beverage Control Act as a whole.
B. Specific Language of Statute
¶ 4 A literal reading of the cited statute requires that caterer licenses shall be issued in counties which have approved liquor by the drink. The licenses, however, are issued by ABLE at its headquarters in Oklahoma County. Moreover, a literal reading would focus on where the license is issued, rather than on where alcoholic beverages may be served under the license. Such interpretation is obviously not what was intended by the Legislature. The Legislature's intent is ascertained by considering the statute as a whole, and its overall purpose and intent. The intent or the purpose of the statute as a whole is to control where alcoholic beverages may be served, not where licenses may issue from.
¶ 5 By the nature of a caterer's business, and as recognized by the cited statute, a caterer serves food and drink at "functions, occasions, or events which are temporary in nature." These catered events may occur in various locations throughout the State; some may occur in counties which have approved liquor by the drink ("wet" counties) and others may occur in counties which have not approved liquor by the drink ("dry" counties).
¶ 6 Although the cited statute requires that a caterer must obtain a separate license if it has more than one place of business, the statute does not require a separate caterer's license for each "wet" county in which the license holder caters an event. The caterer's license, therefore, is valid for all "wet" counties in the State.
¶ 7 For example, an Oklahoma County caterer license holder is permitted to serve alcoholic beverages at a temporary event located in Cleveland County (or at an event located in any other "wet" county in Oklahoma). An Oklahoma County caterer license holder is not, however, permitted to serve alcoholic beverages in any "dry" county.
¶ 8 In light of the purposes for which the Oklahoma Alcoholic Beverage Control Act was enacted, it becomes evident that an interpretation of 37 O.S. Supp. 1996, § 521[37-521](J) must turn on the location where the caterer performs the service of distributing liquor, not where the caterer's business is located.
C. Analysis in Light of Purpose of Oklahoma Alcoholic BeverageControl Act
¶ 9 The purpose of the Oklahoma Alcoholic Beverage Control Act, as previously stated, is to regulate the distribution of alcoholic beverages.[1] Such distribution for a caterer does not occur at the caterer's place of business but at any number of different locations. In fact, Section 521 cited above provides that a caterer may only serve liquor at "functions, occasions, or events which are temporary in nature" and a caterer license "shall not be issued in lieu of a mixed beverage license." Thus, a caterer is prohibited from serving liquor at its place of business. Instead, such "on-premises consumption" is authorized only through a mixed beverage license. 37 O.S. Supp.1996, § 521[37-521](H).
¶ 10 Additionally, due to the nature of a caterer's business, the location of the business itself is meaningless with regard to controlling the flow of alcoholic beverages. Rather, the location of the event, the place at which liquor is to be sold or distributed by the caterer, is the determinative factor for lawfulness. If the event is located in a "wet" county, a caterer may serve liquor by the drink. If the event is located in a "dry" county, a caterer may not. Thus, the caterer's business location is basically insignificant with regard to a caterer's compliance with the Alcoholic Beverage Control Act.
¶ 11 By licensing caterers, ABLE regulates the service of providing alcoholic beverages at temporary events in "wet" counties. The statute explicitly prohibits caterers from providing liquor in "dry" counties. As such, the public is protected from the unauthorized, and illegal, distribution of alcoholic beverages by caterers. No public policy however, is served by denying a caterer whose business is located in a "dry" county from obtaining a caterer's license. The caterer's license only authorizes the holder to provide alcoholic beverages in "wet" counties — regardless of where the caterer's actual place of business is located.
¶ 12 It is, therefore, the official Opinion of the AttorneyGeneral that:
Pursuant to 37 O.S. Supp. 1996, § 521(J), the OklahomaAlcoholic Beverage Laws Enforcement Commission has the authorityto issue a caterer's license to a business located in a countywhere the sale of alcoholic beverages by the individual drink isprohibited, because the caterer's license does not authorize theholder thereof to distribute, sell, or serve alcoholic beveragesin a county where the sale of alcoholic beverages by theindividual drink is prohibited but rather only authorizes theholder to distribute, sell or serve alcoholic beverages incounties which have approved liquor by the drink.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
GRETCHEN ZUMWALT ASSISTANT ATTORNEY GENERAL
[1] The holder of a caterer's license may be subject to further ABLE licensing requirements such as a "private carrier license" (for the transportation of alcoholic beverages) or a "storage license." See 37 O.S. Supp. 1996, § 521[37-521](R) and (T); § 537(G). These licenses are not limited to "wet" counties. Therefore, a holder of a caterer license in a "dry" county is not precluded from also obtaining these types of licenses if necessary.