Dear Superintendent of Public Instruction, Sandy Garrett,
¶ 0 This office has received your request for an Attorney General Opinion in which you ask, in effect, the following questions:
1. Does the Teacher Preparation Act[1] authorize theTeacher Preparation Commission to adopt three separate tests?
 2. Does the Teacher Preparation Act authorize the TeacherPreparation Commission to charge three separate fees for thetests?
 3. Are individuals seeking Alternative Placement certificationpursuant to 1999 Okla. Sess. Laws ch. 202, § 1, to be codifiedat 70 O.S. Supp. 1999, § 6-122.3[70-6-122.3], required to pass thecompetency examination mandated by 1999 Okla. Sess. Laws ch. 62,§ 1, to be codified at 70 O.S. Supp. 1999, § 6-187[70-6-187], prior tothe receipt of an Alternative Placement teaching certificate?
 4. Are individuals seeking alternative placement certificationpursuant to 70 O.S. Supp. 1999, § 6-122.3[70-6-122.3] required to undergoassessment by the Teacher Competency Review Panel established at70 O.S. Supp. 1998, § 6-202[70-6-202] prior to receiving an AlternativePlacement teaching certificate?
 BACKGROUND FOR ANSWERS TO QUESTIONS ONE AND TWO
¶ 1 In 1995 the Oklahoma Legislature enacted the "Oklahoma Teacher Preparation Act" ("Teacher Preparation Act") calling for "the development, implementation and administration of a new competency-based teacher preparation system in Oklahoma." 70O.S. Supp. 1998, § 6-181[70-6-181].
¶ 2 The Teacher Preparation Act provides, in relevant part:
 A. A competency examination shall be adopted by the Oklahoma Commission for Teacher Preparation for the general education, professional education and various subject areas and grade levels for purposes of ensuring academic achievement and competency of each teacher candidate or teacher in the subject area the person is seeking licensure or certification to teach which shall also include licensure or certification as an administrator, as prescribed by the State Board of Education.
. . . .
 B. No teacher candidate shall be eligible for licensing until successfully completing the competency examination. Certification shall be limited to areas of approval in which the licensed or certified teacher has successfully completed the examination. Testing for certification for subjects in which a teacher candidate or teacher is seeking a minor teaching assignment or an endorsement to teach shall be limited to the specific subject area test.
 A teacher candidate or teacher may take the general education, professional education or subject area portions of the examination subject to any limit imposed by the Commission.
70 O.S. Supp. 1999, § 6-187[70-6-187] (emphasis added).
¶ 3 The competency examination is defined in the Teacher Preparation Act as:
 "Competency examination" means the assessment required in the Oklahoma Teacher Preparation Act for licensure and certification as a teacher and shall consist of tests over general education, professional education and subject areas as defined by the Oklahoma Commission for Teacher Preparation.
70 O.S. Supp. 1998, § 6-182[70-6-182](14) (emphasis added).
¶ 4 To fulfill its statutory mandate to develop a competency examination, the Oklahoma Commission for Teacher Preparation ("the Commission"), has developed three tests corresponding to the three areas of competencies defined in the Teacher Preparation Act which applicants for teacher certification must take. The 1998-99 Test Registration Bulletin identifies these three tests as the Oklahoma General Education Test (OGET) the Oklahoma Professional Teaching Examination (OPTE), and the Oklahoma Subject Area Tests (OSAT). A fee is charged for each of these tests.
 I.
¶ 5 Your first question asks whether the Commission may denominate the OGET, OPTE and OSAT as three "tests" rather than "portions" of the competency examination. The answer to the question is found in the legislature's definition, at § 6-182(14), of "competency examination" quoted above. In it the legislature stated that the examination shall consist of tests
over three areas; the Commission has simply followed that legislative pronouncement, developing three tests to assess the three mandated areas. Statutory words are to be understood in their ordinary sense, except when contrary intention plainly appears. Hass v. Excise Bd. of McCurtain County, 698 P.2d 930,932 (Okla. 1985). There is no contrary intention here.
¶ 6 To the extent that the Teacher Preparation Act, in § 6-187, refers to these tests as "portions" of the competency examination, there is no reason to assume that this reference prohibits the creation of separate tests as provided for in the definition. A portion of an examination on specific subject matter is logically a "test" of that subject matter; thus, three different portions of a comprehensive examination may be denominated as three different tests.
¶ 7 Finally, the construction of the examination design itself supports the conclusion that the Commission's decision to develop and administer three separate tests was within its power and authority. At § 6-187(B), the statement is made that "[t]esting for certification for subjects in which a teacher candidate or teacher is seeking a minor teaching assignment or an endorsement to teach shall be limited to the specific subject area test." (Emphasis added).
¶ 8 The determination of legislative intent is the goal of statutory construction. See Clifton v. Clifton, 801 P.2d 693,696 (Okla. 1990). Under the rules of statutory construction statutes must be interpreted in light of their context. SeeDavis v. State, 300 P.2d 1000, 1010 (Okla.Crim. 1956). The intention and purpose of the legislature should not be ascertained from any single, isolated clause or sentence, or from particular or partial recitals, but from a general consideration or viewpoint of the act as a whole. See Nelson v. State,288 P.2d 429, 438 (Okla.Crim. 1955). Thus, looking at the statute as a whole, in context, the answer to your first question is that the Commission may develop and administer three tests — those being general education, professional education and subject area.
 II.
¶ 9 Your second question asks whether the Commission may charge three separate fees for the three tests. The fees established by the Commission range from $45 for the OGET to $60 for an OSAT to $140 for the OPTE.[2] The Teacher Preparation Act speaks explicitly to the authority of the Commission to charge fees.See 70 O.S. Supp. 1998, § 6-191[70-6-191]. It does not provide that separate fees may be charged for separate tests. However, the charging of separate fees follows from a logical construction of the Teacher Preparation Act.
¶ 10 Generally, an officer or agency has, by implication and in addition to powers expressly given by statute, such powers as are necessary for due and efficient exercise of powers expressly granted. See Oklahoma Tax Comm'n v. Fortinberry Co.,207 P.2d 301, 304 (Okla. 1949). As stated above, the Commission has the explicit power to charge fees for the tests in order to pay the costs of administering the tests.[3] Additionally, the statute authorizes a candidate to take one, two or three tests. "A teacher candidate or teacher may take the general education, professional education or subject area portions of the examination subject to any limit imposed by theCommission."[4] 70 O.S. Supp. 1999 § 6-187[70-6-187](B). (Emphasis added). If an applicant is seeking only an endorsement, the testing "shall be limited to the specific subject area test."Id.
¶ 11 Thus, because the statutory blueprint allows, in fact prescribes, the giving of one, two or three tests in some circumstances, the establishment of the three fees quoted above is clearly within the Commission's authority. If the contrary position were taken by the Commission, that the same fee should be charged for a candidate who need only take the OSAT test as for a candidate who must take the OGET, OPTE and OSAT tests, the costs for applicants would be unequal, a consequence the Commission avoided by its design of the fees. Three separate fees may be charged for the three tests.
 BACKGROUND NECESSARY TO ANSWER QUESTIONS NUMBER THREE AND FOUR
¶ 12 Prior to answering your third and fourth questions concerning the interplay of requirements of the Alternative Placement teaching certificate and the requirements of the Teacher Preparation Act, some background of the Alternative Placement teaching certificate is desirable.
¶ 13 The Alternative Placement teaching certificate was authorized by the legislature in 1990. See 70 O.S. Supp. 1999,§ 6-122.3[70-6-122.3]. The statute enables the State Board of Education ("the Board") to grant an Alternative Placement teaching certificate to an applicant who:
 1. Holds at least a baccalaureate degree from an institution whose accreditation is recognized by the Oklahoma State Regents for Higher Education;
 2. Has completed a major in a field that corresponds to an area of specialization for an Elementary-Secondary Certificate, a Secondary Certificate or a vocational-technical certificate;
 3. Declares the intention to earn Standard Certification by means of the Alternative Placement Program in not more than three (3) years. For the purposes of the Alternative Placement Program only, the State Board of Education shall determine the subject matter of professional education component pursuant to this section, and the requirements for the Professional Education component required for Standard Certification shall be as follows:
. . . .
 4. Has passed the curriculum examination(s) in the area of specialization for which certification is sought; and
 5. Either presents a document from an accredited public school district in this state offering employment in the area of specialization for which certification is sought on condition that the person enroll in an Alternative Placement Program approved by the State Board of Education or declares the intention to seek employment as a teacher at an accredited public school district in this state. The certificate granted pursuant to this subsection shall be considered a "valid certificate of qualification" for the purposes of Sections 6-107 and 6-108 of this title, and the holder of such certificate shall be considered a resident teacher for the purposes of Section 6-195 of this title.
70 O.S. Supp. 1999, § 6-122.3[70-6-122.3](A) (emphasis added).
¶ 14 Such a certificate is for one year, renewable for no more than three years, assuming continued employment and progress in an alternative placement program in an institution of higher education as required by Section 6-122.3(A). See 70 O.S. Supp. 1999, § 6-122.3[70-6-122.3](B).
¶ 15 This 1990 plan was an alternative to the traditional route to teacher certification. It was based upon the premise that the applicant completed a college degree in a particular subject or field and was able to complete the curriculum examination but had not taken teacher preparation courses which would qualify him or her for a traditional certificate.
¶ 16 As discussed above, the Teacher Preparation Act established a new structure for teacher employment. The statute provides, in relevant part:
 A. The board of education of each school district shall employ and contract in writing, as required in Section 6-101 of Title 70 of the Oklahoma Statutes, only with persons certified or licensed to teach by the State Board of Education in accordance with the Oklahoma Teacher Preparation Act, except as otherwise provided by law.
 B. The Board shall issue a license to teach to any person who:
. . . .
 4. Has made the necessary application and paid the curriculum examination fee as prescribed by the State Board of Education prior to July 1, 1997, and beginning July 1, 1997, paid the competency examination fee in an amount and as prescribed by the Commission. . . .
 5. Has successfully completed the examination in accordance with the Oklahoma Teacher Preparation Act.
 C. The Board shall issue a certificate to teach to any person who:
 1. Holds a license to teach in accordance with the Oklahoma Teacher Preparation Act;
 2. Has served a minimum of one (1) school year as a resident teacher[.]
70 O.S. Supp. 1998, § 6-190[70-6-190] (emphasis added).
¶ 17 Several provisions of the Teacher Preparation Act, in addition to those set forth above, are relevant:
 It is the intent of the Legislature that this act shall be in addition to existing laws governing teachers, and nothing herein shall be construed as repealing or amending any protection to teachers prescribed, or as removing or diminishing any existing power, authority or responsibility of the local boards of education and the State Board of Education not in conflict with the provisions of this act.
70 O.S. Supp. 1998, § 6-181[70-6-181] (emphasis added).
 The new teacher preparation system shall be competency-based to include an assessment system designed to measure the competencies desired for teachers.
70 O.S. Supp. 1998, § 6-183[70-6-183] (A) (emphasis added).
 The curriculum examination which was required by Section 6-156 of this title shall be restructured into a competency examination. . . . The competency-based teacher examination shall replace
the current teacher curriculum examination which was established in Sections 6-150 through 6-158 and 6-162 through 6-170 of this title.
1999 Okla. Sess. Laws ch. 311, § 2, to be codified at 70 O.S.Supp. 1999, § 6-188[70-6-188] (emphasis added).
 The licensure and certification system required by the Oklahoma Teacher Preparation Act as part of the new teacher preparation system shall be competency based. . . . No higher education courses or credit hours may be specified by the State Board of Education in rules for licensure or certification.
70 O.S. Supp. 1998, § 6-189[70-6-189](A) (emphasis added).
¶ 18 With these statutes as a basis for analysis, it is now appropriate to answer your third and fourth questions.
 III.
¶ 19 Your third question asks whether an individual seeking Alternative Placement certification pursuant to 70 O.S. Supp.1999, § 6-122.3[70-6-122.3] is required to pass the competency examination mandated by 70 O.S. Supp. 1999, § 6-187[70-6-187].[5]
¶ 20 Several principles of statutory construction must be considered here. As stated earlier, a determination of legislative intent is the goal of statutory construction.Clifton v. Clifton, 801 P.2d 693, 696 (Okla. 1990). It is the principle of statutory construction that, where possible, relevant portions of statutes and related enactments will be considered together to give force and effect to all of them.Id. In the case of a conflict between statutory provisions, more recent legislative expressions will be given effect over conflicting prior enactments. See State ex rel. Murphy v.Boudreau, 653 P. 2d 531, 534 (Okla. 1982). However, statutory construction that would lead to absurdity must be avoided and rational construction should be given to the statute if language fair permits, See Ledbetter v. Oklahoma Alcoholic Beverage LawsEnforcement Comm'n, 764 P.2d 172, 179 (Okla. 1988).
¶ 21 As of the enactment of the Alternative Placement program in 1990, initial alternative teaching certification for those who had not completed a teacher education program at a university required successful completion of the curriculum examination. In 1995, as noted above, the legislature clearly expressed its intent that the competency examination replace the curriculum examination. See 70 O.S. Supp. 1998, §§ 6-183[70-6-183], 6-189, 6-190,See also 70 O.S. Supp. 1999, § 6-188[70-6-188]. The competency examination requirement is later in time and, under the rules of statutory construction, shall be given effect over the earlier curriculum examination requirement. Application of the rules of statutory construction lead to the conclusion that one seeking Alternative Placement certification must pass the competency examination which, statutorily, consists of examination on general education, professional education and subject areas prior to receiving an Alternative Placement teaching certificate. See70 O.S. Supp. 1999, § 6-187[70-6-187].
¶ 22 However, a requirement that a person who has taken no college teacher preparation courses pass the professional education test, OPTE, before being considered for certification, may be considered inconsistent with the Alternative Placement Program plan which provides professional education courses be taken after an Alternative Placement Teaching certificate is awarded.
¶ 23 This seeming inconsistency was implicitly addressed by the legislature in 1995 in its creation of the Teacher Competency Review Panel, 70 O.S. Supp. 1998, § 6-202[70-6-202], which authorized the panel:
 [T]o make recommendations to the State Board of Education for the licensure and certification of people who have not graduated from an approved teacher education program in this state, or who have never held a standard teaching certificate in this state, or who are not currently certified to teach in another state. No person shall be certified to teach pursuant to the provisions of the section unless the person holds at least a baccalaureate degree from an accredited institution of higher education, has successfully completed the required competency examination, and has been assessed by and received a favorable recommendation from the Teacher Competency Review Panel.
70 O.S. Supp. 1998, § 6-202[70-6-202](A) (emphasis added).
¶ 24 It is those persons who seek Alternative Placement who have likely not completed a teacher education program nor held a standard teaching certificate nor been certified to teach in another state. The legislature has deemed that such aspirants successfully complete the competency examination.
¶ 25 Thus, the application of the principle of statutory construction to determine the intent of the legislature leads to the conclusion that prior to receipt of an Alternative Placement teaching certificate an individual must pass a competency examination consisting of three tests. These tests are, general education, subject matter education, and professional education. Whether the individual has obtained the competencies through professional education programs or through other experiences, all three competencies must be obtained before an Alternative Placement certificate is permitted under current Commission rules.[6]
 IV.
¶ 26 Your fourth question is whether an applicant seeking an Alternative Placement teaching certificate must receive approval from the Teacher Competency Review Panel established at 70 O.S.Supp. 1998, § 6-202[70-6-202], prior to receiving an Alternative Placement teaching certificate.
¶ 27 In 1995, as part of the enactment of the Teacher Preparation Act, the legislature established the Teacher Competency Review Panel to assess individuals who had not attended approved teacher education programs or held teaching certificates. The legislature authorized the Teacher Competency Review Panel:
 [T]o make recommendations to the State Board of Education for the licensure and certification of people who have not graduated from an approved teacher education program in this state, or who have never held a standard teaching certificate in this state, or who are not currently certified to teach in another state. No person shall be certified to teach pursuant to the provisions of the section unless the person holds at least a baccalaureate degree from an accredited institution of higher education, has successfully completed the required competency examination, and has been assessed by and received a favorable recommendation from the Teacher Competency Review Panel.
70 O.S. Supp. 1998, § 6-202[70-6-202](A) (emphasis added).
¶ 28 As in the analysis above, a principle of statutory construction controls here. Determination of legislative intent is the goal of statutory construction. Clifton v. Clifton,801 P.2d 693 (Okla. 1990). It is the principle of statutory construction that, where possible, relevant portions of statutes and related enactments will be considered together to give force and effect to all of them. Id.
¶ 29 There is no evidence that the legislature exempted those individuals who are seeking an Alternative Placement teaching certificate from assessment by the Teacher Competency Review Panel if they meet the criteria for review by that panel. To the contrary, those individuals who seek Alternative Placement are likely those who have not completed teacher education programs, have not held a standard teaching certificate, are not certified to teach in another state and who are, thus, to be assessed by the Teacher Competency Review Panel. The statute further commands that such assessment is to be performed before certification of applicants, thus requiring that those seeking Alternative Placement who otherwise are required to appear before the Competency Review Panel do so prior to receipt of the Alternative Placement teaching certificate. In order to give full force and effect to both the alternative placement teaching certificate and the Teacher Competency Review Panel, an applicant seeking an Alternative Placement teaching certificate is required to undergo assessment by the Teacher Competency Review Panel.
¶ 30 It is therefore the official Opinion of the AttorneyGeneral that:
 1. The Teacher Preparation Act[7] authorizes theTeacher Preparation Commission to adopt three separate tests, ingeneral education, professional education and subject matterarea.
 2. The Teacher Preparation Act authorizes the TeacherPreparation Commission to charge three separate fees for thetests.
 3. An individual seeking Alternative Placement certificationpursuant to 1999 Okla. Sess. Laws ch. 202, § 1, to be codifiedat 70 O.S. Supp. 1999, § 6-122.3[70-6-122.3], is required to pass thecompetency examination mandated by 1999 Okla. Sess. Laws ch. 62,§ 1, to be codified at 70 O.S. Supp. 1999, § 6-187[70-6-187], prior toreceipt of an Alternative Placement teaching certificate.
 4. An individual seeking Alternative Placement certificationpursuant to 70 O.S. Supp. 1999, § 6-122.3[70-6-122.3] who is required bythe provisions of 70 O.S. Supp. 1998 § 6-202[70-6-202] to receiveapproval from the Teacher Competency Review Panel is required toundergo assessment from the Teacher Competency Review Panel priorto receipt of an Alternative Placement teaching certificate.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
GRETCHEN GROVER HARRIS ASSISTANT ATTORNEY GENERAL
[1] Title 70 O.S. Supp. 1998, §§ 6-180-6-203, except the following:
 1999 Okla. Sess. Laws ch. 202, § 2 (to be codified as 70 O.S. Supp. 1999, § 6-185[70-6-185])
 1999 Okla. Sess. Laws ch. 62, § 1 (to be codified as 70 O.S. Supp. 1999, § 6-187[70-6-187])
 1999 Okla. Sess. Laws ch. 311, § 2 (to be codified as 70 O.S. Supp. 19999, § 6-188)
[2] The fee schedule also includes a registration fee, about which you have not inquired and is not addressed in this opinion.
[3] While there was legislative appropriation for the development costs of the tests, there are no appropriated funds for administration of the tests. The legislature specifically provided that the costs of the administration of the tests come from fees charged applicants. See 70 O.S. Supp. 1998 §6-191[70-6-191].
[4] One can imagine the circumstances under which a candidate might be required to take only the OGET. If the candidate successfully completes the OPTE and OSAT but not the OGET, the Commission seemingly has the authority, under the statute, to require retesting of only the failed OGET. That is its practice at this time.
[5] Emergency rules were passed by the Commission and signed by the Governor, Among these rules is OAC 712:10-7-1(c)(1), that "Individuals seeking certification via the Alternative Preparation Program shall meet the same assessment requirements as all other individuals seeking initial licensure." Thus, those individuals must, according to the current Commission rule, pass the competency examination.
[6] See footnote 5.
[7] Title 70 O.S. Supp. 1998, §§ 6-180-6-203, except the following:
 1999 Okla. Sess. Laws ch. 202, § 2 (to be codified as 70 O.S. Supp. 1999, § 6-185[70-6-185])
 1999 Okla. Sess. Laws ch. 62, § 1 (to be codified as 70 O.S. Supp. 1999, § 6-187[70-6-187])
 1999 Okla. Sess. Laws ch. 311, § 2 (to be codified as 70 O.S. Supp. 19999, § 6-188)