## Ex parte HIGGS.

No. A-11968. Nov. 18, 1953.

(263 P. 2d 752.)

Robert B. Harbison, Altus, and France, Johnson, Gordon & Cook, Oklahoma City, for petitioner.

W. J. Ivester, Altus, for respondent.

BRETT, J.  This is an original proceeding in habeas corpus, brought herein by James Higgs, petitioner.  Higgs complains he is being unlawfully restrained of his liberty by Clint Brake, chief of police of the city of Altus, Oklahoma. Petitioner alleges, in substance, that Title 37, § 213, O.S. 1951, was amended in H.B. 1132 by the Oklahoma Legislature, 1953 Session, and is being construed by the city of Altus, Oklahoma, as granting to cities and towns therein power by its ordinance, city of Altus No. 428, to prohibit the sale on Sunday of nonintoxicating beverages, i.e., 3.2% beer for consumption both on and off the premises.  On the basis of said construction of Title 37, § 213, as amended, and its Ordinance No. 428, purportedly enacted thereunder, prohibiting sales of such beverages on Sunday for consumption off the premises, on an alleged violation of said ordinance occurring on Sunday July 19, 1953, the petitioner was arrested and taken into custody on Monday July 20, 1953, by Chief of Police Clint Brake, respondent herein, and ever since said time has been under restraint.  A rule

to show cause was issued by this court and the petitioner released on bail pending determination of the issues herein involved.

Response to the rule to show cause was filed herein, alleging, in substance, that under and by virtue of the provisions of House Bill No. 1132 amending Title 37, § 213, O.S.A. 1951, the city of Altus enacted Ordinance No. 428, that said ordinance prohibited all sales of 3.2% beer on Sunday for consumption both on and off the premises, and that said ordinance is valid and constitutional, and the petitioner's custody and restraint is therefore lawful. It is not necessary to set forth Ordinance No. 428, since its effect was as hereinbefore stated. On the issues thus joined it is stipulated by petitioner and respondent that the sole question herein involved is, "that if the said ordinance is valid as applied to the sale of 3.2% beer for consumption off the premises between the hours of 12 o'clock p.m. on Saturday and 7 a.m. on the following Monday the writ of habeas corpus should be denied, but if the said ordinance is invalid as applied to such sales for consumption off the premises between the said hours the writ of habeas corpus should be granted."

The cause was set for hearing and oral argument before this court on July 29, 1953. The matter was submitted with directions to the parties to prepare and file written briefs. The order to file briefs was finally fully complied with on September 30, 1953. A showing was made that a determination of the issues herein involved constituted an emergency of public concern, and the cause was advanced on the docket for an early hearing.

It is fundamental in matters of this character that a municipal corporation has only such powers as are conferred upon it by the Legislature, and grants of such powers are strictly construed against such corporations. In re Jones, 4 Okla. Cr. 74, 109 P. 570, 31 L.R.A., N.S., 548; Ex parte Hodges, 65 Okla. Cr. 69, 83 P. 2d 201; Cain's Coffee Co. v. City of Muskogee, 171 Okla. 635, 44 P. 2d 50; Martin v. Rowlett, 185 Okla. 431, 93 P. 2d 1090; Marth v. City of Kingfisher, 22 Okla. 602, 98 P. 436, 18 L.R.A., N.S., 1238; 43 C.J. 186, § 185; 62 C.J.S., Municipal Corporations, §§ 115, 119, p. 249. Moreover, a city council has no power to enact an ordinance exceeding its delegated statutory powers by a definition which would include persons or principals not clearly within the terms of the act granting such power, and where an ordinance exceeds the delegated powers, any attempts to include within its scope matters not within the power granted or attempts to prescribe a meaning for statutory terms and limitations different from those intended by the Legislature, or to extend their meaning, such an ordinance is said to be an excessive use of power and is therefore invalid and void. Furthermore, when any fairly reasonable doubt exists as to the grant of power, such doubt is resolved by the courts against the corporation, and the existence of the power is denied. Cain's Coffee Co. v. City of Muskogee, supra; Martin v. Rowlett, supra.

It is also elemental that where a field of legislation has been reserved to the state that cities and towns are forbidden to enter except by express permission of the state. In the case at bar the "Legislature entered this fertile field and passed such regulations as they thought should surround the sale of this beverage", 3.2% beer. Ex parte Gammel, 89 Okla. Cr. 400, 208 P. 2d 961, 965, Ex parte Pappe, 88 Okla. Cr. 166, 201 P. 2d 260. In said cases we observed "an ordinance passed under" municipal powers "which conflicts with the general laws of the state, must give way, and, while it may run concurrent with the general laws of the state, it may not run counter thereto." Also, "the Legislature and not the courts must determine the policy of the state to be voiced in statutory enactments. Legislative power, not wisdom, is the concern of the courts." In those cases the Legislature had not granted the powers sought to

be exercised and hence they were denied to the municipalities involved. But, as hereinbefore observed, such powers sought to be exercised must fall within the express limits of the delegated authority. The principles announced in the Gammel and Pappe cases are binding upon the petitioner, the city of Altus and this court as principles of law applicable herein. The powers sought to be exercised by a municipality must be found in an express grant of power or such as are within the fair intent and purpose of their creation or which are reasonably proper to give effect to the powers expressly granted. State ex rel. Woods v. Cole, 178 Okla. 567, 63 P. 2d 730; 62 C.J.S., Municipal Corporations, § 117(d), p. 259, Note 50. Since the ordinance herein involved was enacted under a delegation of power from the legislature to cities and towns of Oklahoma the limits of the ordinance as to definition and scope must therefore be found within the provisions of Title 37, § 213, as amended by the Session Laws of 1953, House Bill No. 1132. Hence it is apparent in order to reach a conclusion as to the validity of said ordinance we must first define the limits of the grant of power to cities and towns as contained in the provisions of Title 37, § 213, as amended.

The respondent contends in substance that there is no necessity for a construction of the statute herein involved, for the reason that the language is clear and conclusive and there is nothing to construe. Sledge v. State, 40 Okla. Cr. 421, 269 P. 385. If this were true our task would be a simple one, but the mere fact that there is well supported argument, by both petitioner and respondent, as to the meaning of the statute in question establishes that there exists an obvious fact of ambiguity in Title 37, § 213, as amended.

The fundamental rule of construction is to ascertain the intention of the lawmakers in order that the true meaning of the Legislature may be determined. To accomplish this purpose all parts of the act relating to the subject should be considered together. A later clause or provision may qualify an earlier one, and the converse is equally true. Ex parte Hunnicutt, 7 Okla. Cr. 213, 123 P. 179. Under such conditions as are herewith presented, all courts recognize the principle of resort to rules of construction in arriving at legislative intent. In fact, it is fundamental that the province of construction of statutes lies wholly within the domain of ambiguity. An ambiguous statute calls for resort to every source of interpretative assistance. Moreover, the rules of statutory construction are intended as an aid to resolve doubts and not to create them. Santa Monica Mountain Park Co. v. U. S., Cir., 99 F. 2d 450. There are also certain presumptions that should be indulged, such as, that every word, sentence, or provision was intended for some useful purpose, and has some force and effect and that some effect must be given to each. 82 C.J.S., Statutes, § 316; Knapp v. State ex rel. Commissioners of State Land Office, 206 Okla. 363, 243 P. 2d 660. In 50 Am. Jur. §§ 352, 439, these rules of construction are set forth:

"The different parts of a statute reflect light upon each other, and statutory provisions are regarded as in pari materia where they are parts of the same act. Hence, a statute should be construed in its entirety, and as a whole. The general intention is the key to the whole act, and the intention of the whole controls the interpretation of its parts. The fact that a statute is subdivided into sections or other parts should not obstruct or obscure the interpretation of the law as a whole. All parts of the act should be considered, compared, and construed together. It is not permissible to rest the construction upon any one part alone, or upon isolated words, phrases, clauses, or sentences, or to give undue effect thereto. The legislative intention as collected from an examination of the whole as well as the separate parts of a statute, is not to be defeated by the use of particular terms, but, to the contrary, will prevail over the literal import thereof.

"In the interpretation of a statute containing a proviso, resort should be had to the proviso, to the provisions to which the proviso is appended, and to

act as a whole. All parts of a statute including provisos are to be construed together. For the proper construction of a proviso, consideration need not be limited to the subdivision in which it is found. Although the construction of a statute containing provisos must depend upon its own terms, legislation in pari materia may be taken into consideration, where possible."

The foregoing rules as set forth in American Jurisprudence have been followed in Oklahoma, Case v. Pinnick, 186 Okla. 217, 97 P. 2d 58; Eagle Picher Minning & Smelting Co. v. Linthicum, 175 Okla. 483, 53 P. 2d 687, and many other cases. Applying the foregoing rules to this case, we are confronted with the following situation: Referring to § 213 of Title 37, as amended in 1953, we find that it relates to hours during which sales are prohibited. The natural inquiry with reference to said title follows. Sales of what, where, and when? The clue to the subject matter of the act as to what, is in the body of the act to the effect, "it shall be unlawful for any place licensed to sell beverages containing more than one-half of one percent (½ of 1%) of alcohol by volume and not more than three and two-tenths (3.2%) percent of alcohol by weight to sell such beverages". The place is specifically designated as "for consumption on the premises". The time, or when, is set forth as "between the hours of Twelve (12) o'clock midnight and Seven (7) o'clock a.m. excepting Saturday nights when such beverages may not be sold between the hours of Two (2) o'clock a.m. and Twelve (12) o'clock noon on Sundays". The foregoing are the original provisions of Title 37, § 213 before being amended in 1953. It is thus apparent that the act as originally passed, as to subject matter, related only to "for consumption of 3.2% beer upon the premises". All other sales for consumption off the premises were not mentioned or affected by the original act. Hence it is apparent that "for consumption on the premises" constitutes specific words of limitation as to the act's effectiveness. Moreover it clearly appears, that in the act as originally passed, there is no ambiguity or room for confusion. Its limitation of scope and meaning is perfectly clear. The act as originally passed only referred to the sale of such beverages for consumption on the premises, but the Legislature of 1953 by amendment attached the following proviso:

"Provided, the governing board of any city or town is hereby authorized to prohibit, by ordinance regularly enacted, the sale of such beverages between the hours of Twelve (12) o'clock P.M. on Saturday and Seven (7) o'clock A.M. of the following Monday."

This proviso was a grant of authority to cities and towns of Oklahoma to do something which had theretofore been reserved to the state. Even a casual reading of the proviso makes it apparent that its provisions are in general terms. The proviso, if standing alone, might be free from ambiguity. If the proviso could be construed exclusive of the original provisions of Title 37, § 213, it might be construed as a general grant of authority to prohibit the sale of such beverages as 3.2% beer on Sunday for consumption either on or off the premises because its provisions make no exception as to sales either for consumption on or off the premises. Furthermore, if the proviso was standing alone as an independent statute, we might well conclude that the words "for consumption either on or off the premises" had been inadvertently omitted and this court could supply such words as necessary to complete the obvious sense and to express the legislative intent. 82 C.J.S., Statutes, § 344, p. 689; Ex parte Houston, 93 Okla. Cr. 26, 224 P. 2d 281; In re Blain, 197 Okla. 459, 172 P. 2d 795; Curtis v. Registered Dentists of Oklahoma, 193 Okla. 233, 143 P. 2d 427; Keck v. Oklahoma Tax Commission, 188 Okla. 257, 108 P. 2d 162; Childers v. Paul, 177 Okla. 111, 57 P. 2d 872. But here we have no such situation. The proviso is part of the whole statute (Title 37, § 213, as amended by House Bill No. 1132, S.L. 1953), and under all the authorities must be considered as a whole or in its entirety. 82

C.J.S., Statutes, § 345, p. 691, Note 14. Such is the rule followed by this court in Ex parte Williams, 63 Okla. Cr. 395, 75 P. 2d 904, 905, wherein this court said:

"In the construction of a statute, where the court finds in a particular clause an expression not so definite in its import as those used in other parts of the same statute, if upon review of the whole act the real intention of the lawmaking power can be collected from the definite and extensive expressions used in other parts of the same statute, a construction should be adopted that will give effect to the definite expressions used, unless such a construction contravenes some other potent provision of law."

Looking at the statute as amended as a whole, we find there is a definite conflict between the words of limitation as to the subject matter "for consumption on the premises", and the general words contained in the proviso, "the sale of such beverages" etc. The respondent city of Altus would have us place emphasis upon the term "sale of such beverages," as inclusive of all sales, either on or off the premises, to the exclusion of the words of limitation contained in the original act "for consumption on the premises". This we are not at liberty to do under the rules of construction. We must look at the act and the proviso as a whole.

"All parts, provisions, or sections of a statute or section, must be read, considered, or construed together, and each must be considered with respect to, or in light of, all other provisions or sections, and construed in connection, or harmony, with the whole." 82 C.J.S., Statutes, § 345, p. 694; Ex parte Hunnicutt, supra; Oklahoma Natural Gas Co. v State ex rel. Vassar, 187 Okla. 164, 101 P. 2d 793; Gentry v. Blinn, 184 Okla. 9, 84 P. 2d 27.

It would have been easy for the Legislature to have precluded this controversy by having included in the proviso following the phrase "the sale of such beverages" the clause, "for consumption either on or off the premises" between the hours of 12 o'clock p. m. on Saturday and 7 a.m. on the following Monday: This they did not do. And in view of the fact that the original section of the statute which is involved restricted sales only for consumption on the premises, we have no right to presume that the Legislature intended to increase the scope of the act as originally passed to include sales for consumption off of the premises. In fact, "in construing a statute, the intention or purpose of the Legislature, or the meaning of the statute, is to be determined, not from any single part, portion, or section, or from isolated or particular portions, provisions, clauses, sentences, words or phrases, or from particular or specific expressions or terms, or from partial recitals, but from a general consideration or view of the act as a whole, or in its entirety." 82 C.J.S., Statutes, § 345, p. 699; Ex parte Houston, supra. Because of the ambiguity created in the Legislature's failure to include limitations by definition in the general terms of the proviso, we are compelled to resort to further rules of construction. In Ingram v. State, 51 Okla. Cr. 143, at page 149, 3 P. 2d 736, 737, 739, in the body of the opinion this court said:

"The rule as announced by the Supreme Court of Colorado in the case of Gibson v. People, 44 Colo. 600, 99 P. 333, 335, seems to be in line with modern thought and supported by the great weight of authority. In that case the court held: 'The familiar general rule, which is enforced in this jurisdiction, is that, where words of general import follow specific designations, the application of the general language is controlled by the specific. This is but a rule of construction, and is not allowed to defeat the plain legislative will; yet, where the legislative intent is doubtful, resort to rules of construction is proper.' "

In Smith v. State, 79 Okla. Cr. 1, 151 P. 2d 74, the foregoing rule was followed. In Gentry v. Blinn, supra, the rule was announced:

"The rule that in case of conflicting provisions of the same statute, the last in order of arrangement prevails, is subject to a further rule that, where general terms or expressions in one part of a statute are inconsistent or in conflict with a specific or particular provision in another part, the specific or particular provision prevails if the result will not defeat the clear legislative intent."

We can conclude only that the legislative intent as expressed in the provisions of Title 37, § 213, as amended by S.L. 1953, House Bill No. 1132, was to authorize the prohibition of the sale on Sunday of 3.2% beer for consumption on the premises. We are further of the opinion that looking at the act as a whole and giving force and effect to each and every part in a manner designed to harmonize the same, there was not the intention of the Legislature as expressed in Title 37, § 213, as amended, to interfere with the sale of 3.2% beer in original packages for consumption off the premises.

As evidence of the fact that the Legislature did not intend that sales for consumption off the premises were to be affected by the proviso in House Bill No. 1132, we find that throughout the chapters of the statutes of Oklahoma in relation to the sale of non-intoxicating beverages, i.e., 3.2% beer, the Legislature has maintained a distinction between the two types of sales, (1) for consumption on the premises, and (2) for consumption off the premises in original packages. This act legalizing the sale of 3.2% was referred to the people and became law by their approval in an election had thereon, and became effective in 1933. In 1937, Chapter 16, § 2, S.L. 1937, fixing graduated license fees between the different types of sales is an example of the clear distinction between sales on and off the premises, with different license fees for each. To the same effect is Art. 19, c. 66, H.B. 102, S.L. 1939, fixing license fees and distinguishing between licenses for sales on and off the premises. So also the same distinction was recognized in the act of 1941, Title 37, c. 2, H.B. 2. In all the foregoing described acts of the Legislature no regulation by any authority was provided as to hours at which any type of outlet either for consumption on or off the premises might sell 3.2% beer or beverages. In the act of 1943, Title 37, § 213, as hereinbefore set forth, was the first limitation as to hours for sales covering consumption on the premises. No mention appears therein affecting sales for consumption off the premises. In the first five sections of H.B. 198, C. 2-A, Title 37, S.L. 1943, restricted sales are limited to sales for consumption on the premises. These distinctions have been so construed by all concerned with their enforcement up until the enactment of H.B. 1132. For the ten years from 1943 intervening to 1953, nonintoxicating beverages as defined therein or 3.2% has been sold in the original packages for consumption off the premises by drug stores, filling stations, grocery stores and other off the premises licenses. These sales have been recognized as valid and lawful all over Oklahoma since the inception of the industry in 1933. Even in Altus, Oklahoma, said right has never been questioned.

Support for the foregoing conclusions is found in the administrative construction heretofore placed upon Title 37, § 213, by officers charged with its administration. That construction sustains the conclusions herein set forth. What is meant by the terminology "such beverages" and "for consumption on the premises", as they appear in both the original act and the amending proviso of 1953 may be found in administrative interpretation. In Frazier v. State, — Okla. Cr., — P. 2d —, we held, "It is the general rule that the courts will take judicial notice of the rules and regulations of the executive department", where they have been long acquiesced in, and if they be not in conflict with the express statutory provision, will be persuasive on the courts as a just medium for judicial interpretation. Ex parte Olden, 88 Okla. Cr. 56, 199 P. 2d 228; Ex parte White, 75 Okla. Cr. 204, 130 P. 2d 103.

On three occasions since 1943, the Attorney General has been called upon to render an interpretation of the act as related to sales for consumption off the premises. Said opinions bear dates of August 2, 1947, May 9, 1949, and November 7, 1951. The first opinion states that there are "difficulties and complications incident to any attempted interpretation. * * * In fact, an actual court test seems to offer the only way to an authoritative answer". The first opinion states it is not an official opinion.

The first and second opinions in effect arrive at the conclusion the original act, Title 37, § 213, is ambiguous and in need of clarification, but both arrive at the erroneous conclusion that the sale of nonintoxicating beverages, in whatever form, from 12 o'clock Midnight Saturday, to 12 Noon on Sunday morning is a violation of the law. The second of these opinions expresses a doubt as to the more positive position announced in the first, in the language, "This is a question with reference to which the law is not at all clear". We can find no express language affecting sales for consumption off the premises in the original act, Title 37, § 213, to sustain the conclusion expressed in said first two opinions. Likewise, the Attorney General believing the first two opinions to be in error reversed them and promulgated an official, third and last opinion, on November 7, 1951. All of said opinions were promulgated prior to the act here in question. Neither of the first two opinions issued by the Attorney General were official opinions. The last is an official opinion. Therein it was held by the Attorney General that the provisions of the original act did not apply to sales of nonintoxicating beverages or 3.2% beer sold for consumption off the premises. All conflicting opinions therewith were expressly withdrawn. It reads as follows, towit:

"The Attorney General acknowledges receipt of your letter dated November 5, 1951, wherein you in effect ask if Section 3, Chapter 2a, page 109, Oklahoma Session Laws 1943 (37 O.S. Supp. 1941 P. 213) prohibits the sale of the beverages mentioned therein (usually referred to as beer) during any of the hours set forth in said section for consumption off the premises where sold.

"In reply you are advised that said section 3 (37 O.S. Supp. 1949, P. 213) is as follows:

" 'From and after the effective date of this Act it shall be unlawful for any place licensed to sell beverages containing more than one-half of one per cent (½ of 1%) of alcohol by volume and not more than three and two-tenths (3.2%) per cent of alcohol by weight to sell such beverages for consumption on the premises between the hours of 12 o'clock midnight and 7 o'clock a. m. excepting Saturday nights when such beverages may not be sold between the hours of 2 o'clock a. m. and 12 o'clock noon on Sundays.'

"The above section was construed by the Criminal Court of Appeals of this State in the case of Ex parte Pappe, 1948, 88 Okla. Okla. Cr. 166, 201 P. 2d 260, in relation to the selling of beer 'for consumption on the premises of seller', as follows:

" 'The Legislative Act not only prohibited the sale of beer between certain hours on Sunday but also from midnight to 7:00 a. m. on each week day.', from which it appears that said court construed the prohibition in Section 3, supra, as to the sale of beer 'for consumption on the premises where sold to apply alike to all of the hours mentioned in said Section.'

"The Attorney General is, therefore, of the opinion that the prohibition as to the sale of the beverages mentioned in Section 3, supra, (37 O.S. Supp. P. 213) during specified hours does not apply to the sale thereof during any of said hours for consumption off the premises where sold. Any opinion of the Attorney General in conflict herewith is hereby withdrawn."

The latter official opinion not being in conflict with the express provisions of the statute, Title 37, § 213, in our opinion, was a correct interpretation, prior to the enactment of the proviso H.B. 1132. Since the general language of the proviso is limited as to subject matter by the special words of limitation "for consumption on the premises," it cannot be extended to cover sales of non-intoxicating beverages for consumption off the premises.

The Legislature did not change the law as to the subject matter of the original act, by the proviso in H.B. 1132. It still dealt with sales for consumption on the premises, which limits the proviso to such sales, only, the general language of which contains no express intention to include sales for consumption off the premises.

Hence Ordinance 428 enacted by the city of Altus, in so far as it attempts to prohibit Sunday sales "for consumption off the premises" constitutes an unauthorized exercise of power. But, this holding does not impair the effectiveness of Ordinance No. 428 in so far as the same relates to all Sunday sales of 3.2% beverages for consumption on the premises.

The foregoing constitutes only an answer to the stipulation of the parties hereto but in interpreting a legislative act courts are not compelled to abdicate to the stipulation of parties. Litigants are presumed to want the whole answer not just part of it. If we were to pitch the results of this litigation on the foregoing stipulation only, the interpretation of the legislative intent, as expressed in Title 37, § 213, as amended, would be but half finished and the situation left in a state of confusion, as to the real object of the legislature in delegating such authority to towns and cities. Courts should avoid doing things in halves and should not knowingly lend themselves to confusion. Moreover those who sell 3.2% beer and those who have to enforce the law are greatly interested in knowing what can and what cannot be done. Under this none too clear legislative act those entrusted with passing ordinances want to know the limit of their authority and those invested with the enforcement of the same must know what they are called upon to enforce. Furthermore, those who are engaged in the sale of the product are not interested in buying further litigation. The writer believes that an expression as to the overall legislative intent will be welcomed.

Apparently, it was the intention of the Legislature to authorize cities and towns to prohibit all Sunday sales of 3.2% beer for public drinking and to authorize said towns and cities to close on Sundays bars and taverns devoted primarily to selling 3.2% beer for consumption on the premises, but the Legislature did not prescribe the method by which this could be effected as to licensees holding a license to sell for consumption both off and on the premises. How this may be done and not discriminate against such licensees in favor of those licensed and permitted to sell on Sunday only for consumption off the premises is a matter left unsettled by the legislative act. For us to assume the responsibility of prescribing the details of such sales would constitute judicial legislation. Nevertheless, the power contained in the act is broad enough to include such delegation of authority to towns and cities. As to whether a city or town would permit taverns licensed to sell 3.2% beer for consumption both off and on the premises, to make sales in original containers on Sundays for consumption off the premises, from window dispensaries or half doors or otherwise would be a matter of legislative concern of said towns and cities, as well as a matter of administrative enforcement. The method by which such sales for consumption off the premises might be effected from bars and taverns is within the determination of said towns and cities enacting ordinances under Title 37, § 213, as amended.

Finally, the respondent contends that if authority cannot be found in Title 37, § 213, as amended, to support Ordinance 428 as enacted by the city of Altus as affects Sunday sales of 3.2% beer for consumption off the premises, then the city has the power existing under the authority of the Sabbath-breaking statute, § 908, Title 21, O.S. 1951, reading as follows, towit:

"The following are the acts forbidden to be done on the first day of the week, the doing of any of which is Sabbath-breaking:

"First: Servile labor, except works of necessity or charity.

"Second. Trades, manufactures and mechanical employment.

"Third. All shooting, horse racing or gaming.

"Fourth. All manner of public selling, or offering or exposing for sale publicly, of any commodities, except that meats, bread, fish and all other foods may be sold at anytime, and except that food and drink may be sold to be eaten and drank upon the premises where sold, and drugs, medicines, milk, ice and surgical appliances and burial appliances and all other necessities may be sold at any time of the day."

Obviously, it is strange indeed that this statute has never before been relied on to effect the object of the respondent, in this regard. To seek to invoke this statute under the conditions herewith presented is manifestly a concession of weakness in respondent's attempt to stretch the language of Title 37, § 213, as amended, to cover sales in original containers for off the premises consumption. If its position is well grounded in its contentions as to the validity of Ordinance 428, why grasp at straws? Respondent concedes in its brief, "Of course, we believe that said section 213, Title 37, as amended, did supersede the Sabbath-breaking statute as the same applied to beer sold for consumption off the premises". In this concession it is correct, for it is special legislation enacted for a specific purpose, directed to a particular subject matter, which controls over general legislation, Title 21, § 11, O.S. 1951. But even under the general Sunday closing law certain exceptions are made such as "drinks" which would include nonintoxicating beverages. (It must be borne in mind that we are not dealing here with an intoxicant prohibited by law, but with a drink expressly defined by law as legal, and others not so defined but generally regarded as such. Altus to exclude 3.2% beer and beverages of such content would bring the case within the holding of Sparger v. Harris, 191 Okla. 583, 131 P. 2d 1011, 1013, holding, "Can the sale of a drink which may be legally sold throughout the week be prohibited on Sunday by municipal ordinance?" To which the Supreme Court of this state said, "In this jurisdiction the answer to the question is, no." To have held otherwise would have permitted discrimination between one drink defined by law as legal, and others not so defined but generally regarded as such. To the same effect as Sparger v. Harris, supra, is Ex parte Ferguson, 62 Okla. Cr. 145, 70 P. 2d 1094, 1098, wherein it was said, that such an ordinance as herein involved is, "a special one, aimed without any apparent legitimate reason at a class of business, with a general exemption to all other classes (as applied to lawful drinks), and does, therefore, in effect grant special privileges and immunities to certain classes of citizens, while, without legal excuse, denying them to others." Of course, the very nature of a tavern, or barroom, where congregational drinking is indulged in, affords sufficient legal excuse to close them as such on Sundays. 83 C.J.S., Statutes, § 366, p. 802, Note 58; Ex parte Johnson, 77 Okla. Cr. 360, 141 P. 2d 599. Since they cannot be classed as a work of necessity or charity, and the keeping open of such institutions on Sunday may be offensive to the moral sense of the community. But as the law now is written, both with reference to Title 37, § 213, as amended, and Title 21, § 908, O.S. 1951, Sunday sales of nonintoxicating 3.2% beverages as a drink (for consumption off the premises) is permissible. To avoid discrimination between

those who are licensed to sell both on and off the premises, who will be compelled to close their barrooms under this act, and those who can sell on Sundays in original containers for consumption off the premises, it becomes more apparent that in the case of prohibited barrooms or taverns, who are allowed to sell in original containers for consumption off the premises, some method must be adopted for such institutions to bring themselves within the excepted class, without opening up such prohibited facilities on Sunday for sales for off the premises consumption. In no other way, under this act, can we avoid granting special privileges and immunities to certain classes of license holders such as grocery stores, and package dispensaries without the burden of bars, while without legal excuse deny the right of sale in original containers for consumption off the premises to those who have such license but are encumbered as taverns with bars. In effect, the state will not be permitted to discriminate against like licensees who can operate with slight inconvenience and cost and still not violate the prohibited features of the law. In Ex parte Hodges, supra, the court said:

"The general rule that municipal corporations can exercise only such powers as are either expressly conferred on them or are necessary to carry into effect the powers thus conferred applies to ordinances regulating the sabbath." Ordinance 428 falls within this rule.

In conclusion, Ordinance 428 in so far as it relates to Sunday sales in the city of Altus of 3.2% beer or such beverages for consumption on the premises is a valid exercise of power conferred by Title 37, § 213, as amended in 1953, S.L., but as to the attempt therein to prohibit sales on Sundays in original containers for consumption off the premises, as hereinbefore provided, is an excessive use of power, and invalid and void, contrary to the power expressly granted to the city and that reserved to the state. As was said in Ex parte Pappe, 88 Okla. Cr. 166, 201 P. 2d 260:

"The Legislature by thus speaking has laid down the rule which will control in both urban and rural communities pertaining to Sunday sale of this beverage. The State having thus invaded this field and passed an act pertaining to the sale of this beverage on Sunday, a municipality may not pass any ordinance that conflicts with the general statute."

As to sales for consumption off the premises Ordinance No. 428 is in conflict with the powers expressly granted, as well as those reserved to the state and also in conflict with the general Sabbath-breaking statute Title 21, § 908, O.S. 1951.

For all the reasons hereinbefore set forth the writ of habeas corpus is accordingly granted and the petitioner discharged.

POWELL, P.J., and JONES, J., concur.