**BOSCO'S CLUB, INC., a corporation, Plaintiff,**

**v.**

**CITY OF OKLAHOMA CITY, a municipal corporation, Defendant.**

**No. CIV 83–2439–R.**

United States District Court, W.D. Oklahoma.

Nov. 11, 1984.

Rick Romano, Joel L. Carson, Oklahoma City, Okl., for plaintiff.

Diane L. Davis, Asst. Mun. Counsel, Walter M. Powell, Mun. Counsel, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAVID L. RUSSELL, District Judge.

The Plaintiff brought this action against the City of Oklahoma City seeking declaratory and injunctive relief from a newly enacted city ordinance on October 4, 1983. The Plaintiff's motion for a preliminary injunction was denied on October 14, 1983, the Court concluding that the Plaintiff had failed to demonstrate a likelihood of prevailing on the merits. The case then proceeded to a bench trial on February 1, 1984, and was taken under advisement at that time. The Court is now prepared to render judgment and issues this Memorandum Opinion to record its findings of fact and conclusions of law. *See* Fed.R.Civ.P. 52(a).

### I.

The ordinance challenged in this action was promulgated by the City on July 19, 1983 and amended on September 13, 1983.[1] As amended, the ordinance supplemented the Oklahoma City Code with, *inter alia,* the following provisions:

> No licensee, owner, manager, employee, proprietor, or any agent, associate or

---

1. The Plaintiff originally challenged Ordinance No. 17,293 as well. This ordinance prohibits nude dancing in private clubs such as the Plaintiff. However, as the Pretrial Order indicates, the Plaintiff has abandoned its challenge to the nude dancing ordinance. Only the solicitation ordinance mentioned in this Memorandum Opinion was at issue in the bench trial.

representative of a licensed establishment shall:

(a) Employ or permit any employee to beg, solicit, induce, procure or request a patron to purchase any alcoholic or non-alcoholic beverage for himself or herself or for any other employee or person not a patron; or

(b) Knowingly serve to any employee any alcoholic or non-alcoholic beverage which was purchased by any patron; or

(c) Permit upon any licensed establishment any employee to loiter on or remain on said premises who begs, solicits, induces, procures or requests a patron to purchase an alcoholic or non-alcoholic beverage for any employee; or

(d) Solicit, induce or request a patron to purchase any alcoholic or non-alcoholic beverage for himself or herself or for any person not a patron; or

(e) Permit any employee to mingle or fraternize with patrons of such licensed establishments. Provided, however, this provision is not applicable to communications between the patrons and the employee when the employee is performing the duties in the furtherance of service of food and/or drinks.

The term "licensed establishment" is defined as "any place of business which is licensed as a private club or has been issued a retail dealer's license." The ordinance also prescribes a fine of up to three hundred dollars for violation of any of these provisions.

As the evidence presented at trial indicates, this ordinance was enacted solely to curtail activity known as the "B girl operation," whereby employees of the licensed establishments solicit patrons to purchase drinks at inflated prices upon the implied promise of sexual favors. A task force was commissioned by the City to study the problem in the Oklahoma City area, and the result was recommendation of the ordinance in question. The ordinance was modeled upon similar statutes adopted in other jurisdictions in response to the proliferation of "B girl" bars.

The Plaintiff, an Oklahoma corporation doing business at 2829 West California Street in Oklahoma City, is licensed by the City as a private club pursuant to the Oklahoma City Code, and by the State of Oklahoma as a retail dealer of non-intoxicating beer pursuant to the Manufacture and Sale of Non-Intoxicating Beverages Act, 37 O.S. 1981 § 163.1—§ 163.23. Thus, the ordinance in question presumably applies to the Plaintiff in each of these capacities and prohibits the conduct mentioned above on the premises of the club.

The Plaintiff challenges the solicitation ordinance on Oklahoma statutory grounds as well as federal constitutional grounds. The Court will consider each of the Plaintiff's claims *seriatim*.

## II.

The Plaintiff's challenge to the ordinance on Oklahoma statutory grounds is based upon the assertion that the Oklahoma legislature has preempted the licensing and regulation of the sale of nonintoxicating beer in Oklahoma. Thus, the Plaintiff argues that the City exceeded its authority by enacting an ordinance regulating the sale of nonintoxicating beer in Oklahoma City.

■ As a preliminary matter, the Court must determine whether the Plaintiff is entitled to challenge the ordinance both as a private club and as a retail dealer. The City argues that, as the Plaintiff is a private club licensed by the City of Oklahoma City, it is entitled to challenge the ordinance only as a private club. Under this interpretation, the Plaintiff would lack standing to challenge the ordinance as unlawful regulation of the sale of nonintoxicating beer. In support of this proposition the City cites the unpublished opinion of the Oklahoma Court of Criminal Appeals in *Scott v. State*, No. M–82–518 (Okla.Ct. Crim.App. Aug. 9, 1983).

The Court finds this proposition without merit. First, *Scott* is distinguishable from the case at bar in that the appellant therein attempted to use his dual status as a private club and a restaurant to avoid statutory regulation in the form of mandatory

closing hours. *Scott, slip op.* at 4. In this case, the Plaintiff seeks to do just the opposite; the Plaintiff attempts to use its dual status to avail itself of statutory regulation that presumably preempts any regulation by the City. Thus, the reasoning in *Scott* is inapposite to the case at bar. Second, the ordinance in question purports to regulate conduct in both private clubs and retail dealer establishments, and the Plaintiff is clearly in both categories. The Court sees no logic in denying the Plaintiff an opportunity to challenge the ordinance on a statutory basis that is available to other retail dealers, simply because the Plaintiff has also secured licensing as a private club by the City. Third, adoption of the City's proposition would bring about an anomalous result: the Plaintiff, which owes its legal existence in part to statutory authority, would be prevented from challenging the City's ordinance as violative of the very authority by which the Plaintiff exists. Thus, the Court concludes that the Plaintiff is entitled to challenge the solicitation ordinance both as a private club and as a retail dealer.

■ The remaining issue is thus whether the solicitation ordinance impermissibly regulates the sale of nonintoxicating beer. It is clear that the Oklahoma legislature has preempted the authority of a municipality to regulate the sale of nonintoxicating beer. *E.g., 7-Eleven, Inc. v. McClain,* 422 P.2d 455, 459–60 (Okla.1967); *Allison v. Howell,* 204 Okl. 404, 230 P.2d 706, 709 (1951); *Ex parte Higgs,* 97 Okl.Cr. 338, 263 P.2d 752, 756–7 (1953); *Ex parte Gammel,* 89 Okl.Cr. 400, 208 P.2d 961, 966–7 (1949); *Ex parte Pappe,* 88 Okl.Cr. 166, 201 P.2d 260, 263 (1948); *Cunningham v. Oklahoma City,* 556 P.2d 1078, 1079–80 (Okla. Ct.App.1976). Thus, if the ordinance can be characterized as one which regulates the sale of nonintoxicating beer, it must be held invalid as promulgated in excess of the City's authority.[2]

■ It is the opinion of the Court that the solicitation ordinance cannot be so characterized. The evidence presented at trial indicates that the ordinance was enacted solely for the purpose of curtailing the infamous "B girl operation." The City did not intend that the ordinance regulate the sale of nonintoxicating beer; its intent was simply to proscribe and punish morally culpable conduct peculiar to drinking establishments. Further, the ordinance itself is neutral on its face with respect to the sale of nonintoxicating beer.[3] No beer sales are prohibited; only solicitation and its attendant consequences are proscribed by the ordinance. Thus, the ordinance cannot be characterized as regulating the sale of non-

---

**2.** It should be noted that the Oklahoma authorities provide little guidance as to whether the instant fact situation establishes an impermissible regulation of the sale of, or licensing to sell, nonintoxicating beers. The cases on record deal with restrictions as to business locations, *7-Eleven,* 422 P.2d at 456; *Allison,* 230 P.2d at 707–8; *Gammel,* 208 P.2d at 966; *Cunningham,* 556 P.2d at 1079, or with restrictions as to the permissible hours of operation. *Higgs,* 263 P.2d at 761; *Pappe,* 201 P.2d at 262. No case deals with the question whether regulation of specific conduct within the establishment is also a regulation of the sale of nonintoxicating beer.

**3.** It is interesting to note that the ordinances stricken down by various Oklahoma courts generally have stigmatized a tavern or the sale of beer in general as injurious to public welfare or morals. Thus, ordinances designed to prevent taverns from locating near a school, presumably to protect young impressionable persons from the damaging influences of such establishments,

have been invalidated as conflicting with State law. *See 7-Eleven,* 422 P.2d at 456; *Allison,* 230 P.2d at 707–8; *Cunningham,* 556 P.2d at 1079. Likewise, ordinances reflecting a perceived antipathy between religious observance and the sale of beer have been stricken. *See 7-Eleven,* 422 P.2d at 456; *Higgs,* 263 P.2d at 761; *Pappe,* 201 P.2d at 262. In contrast, the ordinance in this case is truly neutral with respect to the moral worth of the establishments themselves. The ordinance does not attempt to stigmatize the sale of beer or to keep establishments selling beer out of the view of persons of tender sensibilities. The ordinance simply criminalizes certain conduct which appears to be unique to such establishments. Even *Gammel* is inapposite to this case, as the ordinance in *Gammel* seems to assume the fact that illegal conduct will occur inside an establishment which sells beer. 208 P.2d at 966–7. This ordinance purports to regulate the proscribed conduct where it exists, but does not assume that it will exist in taverns.

intoxicating beer in the sense that such regulation is the purpose of the ordinance.

The Plaintiff seems to argue that an unintended impact on the sale of nonintoxicating beer is sufficient to make the ordinance a regulation of such sales. Assuming *arguendo* that this is so, the Court is persuaded that any unintended impact on the sale of beer by this ordinance is at best negligible. Arguably, beer purchases will decline if patrons cannot be solicited to purchase beer for establishment employees. However, the amount of beer purchased for employees is necessarily small in comparison to the amount of beer purchased by patrons for themselves. And the Plaintiff has failed to persuade the Court that his beer sales have in fact been affected at all by the ordinance. While the Plaintiff's evidences does indicate a general decline in sales over the months preceding trial, such decline may be attributable as much to the City's nude dancing ordinance as to the solicitation ordinance. Thus, the Court concludes that the unintended impact, if any has taken place in this case, is sufficiently *de minimis* as to be negligible. This being so, the Court cannot conclude that an ordinance not intended to regulate beer sales has become a *de facto* regulation because of its impact.

In summary, it is the opinion of the Court that the solicitation ordinance does not regulate the sale of nonintoxicating beer. The City therefore has not usurped authority reserved for the Oklahoma legislature, and the Court concludes that the ordinance withstands the Plaintiff's statutory challenge.

### III.

The Plaintiff's federal constitutional challenges to the solicitation ordinance focus on the equal protection and due process clauses of the fourteenth amendment and the first amendment guarantee of free speech. A preliminary matter to be determined is whether the Plaintiff has the standing to assert the constitutional rights of its employees and patrons. As the City notes, the general rule is that "one to whom application of a statute is unconstitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or situations in which its application might be unconstitutional." *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960). However, this general rule is not without exceptions, some of which the Court finds applicable to the case at bar. The Court will discuss the standing issue as it applies to the analysis of each of the Plaintiff's individual constitutional claims.

### A.

The Plaintiff's equal protection argument focuses on the fact that under the ordinance employees in licensed establishments and employees in establishments not defined as licensed receive disparate treatment. The Plaintiff notes that employees in the former category are prohibited from certain kinds of conduct, such as mingling or soliciting, while employees of establishments not covered by the ordinance may engage in such conduct. The Plaintiff asserts that such disparate treatment denies its employees equal protection of the laws in violation of the fourteenth amendment.

Squarely at issue here is the City's assertion that the Plaintiff lacks the standing to assert the constitutional rights of its employees. However, the Court finds the City's position untenable for two reasons. First, the Plaintiff, a corporation, can act only by and through its employees. Thus, if the ordinance infringes the constitutional rights of the employees as they work, it is obvious that the Plaintiff has suffered the harm as well. Further, it is clear in the context of an equal protection challenge that the Plaintiff can assert the rights of its patrons because of the relationship between them. *Craig v. Boren,* 429 U.S. 190, 194, 97 S.Ct. 451, 455, 50 L.Ed.2d 397 (1976). *A fortiori,* the Plaintiff may assert the rights of its employees, as it stands in an even closer relationship to them than it does to its patrons. Thus,

the Plaintiff has standing to assert its equal protection argument.

 The most important component of any equal protection analysis is the determination of the appropriate level of scrutiny to be applied to the challenged enactment. Where the challenged enactment creates suspect classifications or denies a fundamental right, strict scrutiny, or close judicial scrutiny, is to be applied to the enactment. *San Antonio School District v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973); *McDonald v. Board of Election Commissioners,* 394 U.S. 802, 807, 89 S.Ct. 1404, 1407, 22 L.Ed.2d 739 (1969). *See also Craig v. Boren,* 429 U.S. 190, 204, 97 S.Ct. 451, 460, 50 L.Ed.2d 397 (1976); *Frontiero v. Richardson,* 411 U.S. 677, 682, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583 (1973); *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969). However, where neither of these justifications for strict scrutiny is present, only minimal scrutiny is applied to a challenged ordinance. *See McGinnis v. Royster,* 410 U.S. 263, 276–7, 93 S.Ct. 1055, 1062–3, 35 L.Ed.2d 282 (1973). As the solicitation ordinance in this case neither denies a fundamental right[4] nor creates a suspect classification, the minimal scrutiny or "rational basis" approach is applicable to this case. *Cf. Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971); *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970); *McDonald,* 394 U.S. at 807–9, 89 S.Ct. at 1407–9. Thus, the appropriate inquiry in this case is "whether the challenged distinction furthers some legitimate, articulated [City] purpose." *McGinnis,* 410 U.S. at 270, 93 S.Ct. at 1059. *But see United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461,

66 L.Ed.2d 368 (1980) (Purpose need not be articulated); *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961) ("A statutory discrimination will not be set aside if *any* state of facts *reasonably may be conceived* to justify it." [emphasis added] ). The ordinance must be sustained if there exists an articulated rational basis for the distinction, as "[t]he constitutional safeguard [of equal protection] is offended only if the classification rests on grounds wholly irrelevant to the achievement of the [City's] objective." *McGowan,* 366 U.S. at 425, 81 S.Ct. at 1104.

It is clear that the City has a legitimate interest in curtailing "B girl" operations in establishments in Oklahoma City. The evidence presented at trial indicates that the operation promotes prostitution, extortion and fraud, and serves no useful purpose whatever. Thus, it is a legitimate goal of the City to eradicate such conduct. The issue in this case is therefore whether the distinction impliedly made by the ordinance furthers this interest of the City. There must be some rational basis for the distinction drawn by the ordinance.

The Court concludes that there is a rational basis for the distinction made by the ordinance, between employees of a licensed establishment and employees of establishments not covered by the ordinance. In promulgating the ordinance, the City attempted to identify the types of establishments in which "B girl" operations were likely to occur. The ordinance therefore implicitly distinguishes between licensed establishments and non-licensed establishments. Licensed establishments are those which either sell nonintoxicating beer or serve alcoholic drinks. Non-licensed establishments are those which do neither. The

---

4. To the extent that the ordinance proscribes only conduct, the right to mingle and solicit drinks can hardly be described as a fundamental right. To the extent that the ordinance discriminatorily burdens the first amendment right to free speech, *see Police Department v. Mosley,* 408 U.S. 92, 101–2, 92 S.Ct. 2286, 2293–4, 33 L.Ed.2d 212 (1972), it proscribes only commercial speech, which is entitled to substantially

less protection than other forms of speech. *See infra* at 893. Thus, while the right of free speech is a fundamental right, the subordinate right to speak commercially is not. *Cf. McDonald v. Board of Election Commissioners,* 394 U.S. 802, 807–09, 89 S.Ct. 1404, 1407–09, 22 L.Ed.2d 739 (1969) (First Amendment right to vote is fundamental, but subordinate right to absentee ballot is not).

distinction is meaningful in curtailing "B girl" operations. The common denominator among establishments in which "B girl" operations flourish is that the establishments obtain their principal revenue from serving intoxicating drinks or selling nonintoxicating, but nonetheless alcoholic, beer. And the evidence presented at trial indicates that the operation does exist in many of the establishments that have been defined as licensed establishments under the ordinance. Further, the evidence presented at trial indicates that a typical "B girl" operation would have little likelihood of success in establishments not covered by the ordinance, as the usual "B girl" procedure is to solicit alcoholic drinks from a patron who is already indulging himself with such a drink.[5] Thus, the City had ample reason to conclude that solicitation and mingling should be prohibited only in licensed establishments, as defined by the ordinance, because proscription of such conduct in other establishments would not further the purposes of the ordinance.

The City has thus articulated a substantial rational basis for distinguishing between the two classes of employees created by the ordinance. This distinction furthers the City's legitimate interest in curbing the "B girl" operations. Accordingly, the Court concludes that the Plaintiff's equal protection challenge to the solicitation ordinance must fail. *Accord, Shevin v. Bocaccio,* 379 So.2d 105, 107 (Fla.1979).

### B.

The Plaintiff's due process argument is that the ordinance is unconstitutionally vague. The Plaintiff contends that the ordinance proscribes certain classes of conduct but provides no clear guide for determining what conduct is legal and what conduct is illegal. In support of this argument the Plaintiff presents testimony that several employees have left employment for fear of being arrested for conduct that they are unaware is illegal.

It must first be noted that the City's standing argument has no force in the context of this vagueness challenge. While it is true that the Plaintiff cannot assert the rights of its patrons, it is not for a lack of standing; rather, it is because the ordinance does not proscribe any conduct on the part of the patrons. Further, it seems clear that if the ordinance is vague, it is indeed vague as to both the Plaintiff and its employees, as the ordinance purports to proscribe the conduct of both. And as the Plaintiff can be held liable only through the acts of its employees, the Plaintiff is entitled to assert the vagueness of the ordinance on behalf of its employees. Thus, the Court concludes that a lack of standing is no bar to the Plaintiff's due process claim.

Although the Plaintiff generally asserts that the entire ordinance is vague, the argument is essentially confined to the contention that subparagraph (e) of the ordinance is unconstitutionally vague. However, for purposes of the record, the Court concludes that subparagraphs (a) through (d) are not vague. Indeed, those provisions seem crystal clear to the Court. The ordinance carefully delineates who is subject to its provisions, and defines any terms likely to be misconstrued. Further, the ordinance clearly enumerates the acts which are prohibited thereunder. The first four provisions leave nothing to chance, and an employee can hardly be misled because the ordinance lacks specificity. These initial provisions give "fair notice to those to whom [the ordinance] is directed," and the first four provisions (a) through (d) are therefore not unconstitutionally vague. *Grayned v. City of Rockford,* 408 U.S. 104, 112, 92 S.Ct. 2294, 2301, 33 L.Ed.2d 222 (1972), *quoting American Communications Association v. Douds,* 339 U.S. 382, 412, 70 S.Ct. 674, 691, 94 L.Ed. 925 (1950).

---

**5.** When asked to enlighten the Court as to the magic of alcohol in the typical "B girl" operation, one City police officer simply asserted that a solicitation, founded upon an implied promise of sexual favors, would have little likelihood of success in the context of items other than alcoholic drinks. To paraphrase the officer's testimony, the solicitation loses much of its effect when an employee asks a patron to buy for the employee a five hundred dollar hot dog.

The analysis becomes more complicated in light of the vagueness challenge to subparagraph (e), which prohibits licensees, owners, managers, employees, proprietors or agents, associates or representatives of a licensed establishment from permitting "any employee to *mingle* or *fraternize* with patrons of such licensed establishments." [emphasis added]. The provision does, however, except from this proscription "communication between the patrons and the employee when the employee is performing the duties in furtherance of service of food and/or drinks." The Plaintiff argues that the terms "mingle" and "fraternize" lack sufficient specificity to save the ordinance from unconstitutional vagueness.[6]

■ It is clear that due process commands invalidation of a statute the provisions of which are not clearly defined. *Grayned,* 408 U.S. at 108, 92 S.Ct. at 2298. The constitutional vagueness rationale protects three particular interests: (1) a statute or ordinance must provide fair warning that gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited; (2) a statute or ordinance must provide explicit standards for those who enforce the laws to prevent arbitrary and discriminatory enforcement; and, (3) a statute or ordinance must be particularly well defined where it impacts on first amendment rights. *Grayned,* 408 U.S. at 108-9, 92 S.Ct. at 2298-9.

■ The Plaintiff argues that subparagraph (e) infringes each of the *Grayned* interests in this case. The Plaintiff first contends that its employees cannot determine exactly what conduct is prohibited by the ordinance, and indeed one witness testified that she was unable to discern right from wrong under the ordinance. The Plaintiff also asserts that the ordinance, as currently written, will permit Oklahoma City policemen to enforce an ordinance in a discriminatory manner. The Plaintiff apparently feels that it will be victimized while other licensed establishments, such as country clubs, will not have to suffer enforcement. Finally, the Plaintiff argues that the prohibition against mingling and fraternizing regulates free speech and, as the first amendment is implicated, the ordinance must be particularly clear and narrowly drawn.[7]

■ In determining whether a facially imprecise ordinance or statute is nevertheless sufficiently particular to avoid unconstitutional vagueness, the Court must look to three factors: (1) the meaning of the words used in the enactment itself; (2) the interpretation of the enactment given by the appropriate state courts; and, (3) the interpretation of the enactment given by those who must enforce it. *Grayned,* 408 U.S. at 110, 92 S.Ct. at 2300. *See also Cole v. Richardson,* 405 U.S. 676, 685-6, 92 S.Ct. 1332, 1337-8, 31 L.Ed.2d 593 (1972); *Gooding v. Wilson,* 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972); *Coates v. Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). As the courts of Oklahoma have yet to construe the ordinance in question, the Court must look exclusively to the meaning of the words and the interpretation given by those who enforce the ordinance.

With respect to the latter factor, the evidence presented at trial indicates that in general Oklahoma City policemen are aware of the purpose of the ordinance and find the mingling provision limited by a requirement of solicitation in general and a "B girl" operation in particular. Because the potential for discriminatory enforcement exists despite this clear understanding, the Court declines to extend great deference to such an interpretation;

6. The terms "mingle" and "fraternize" also provide the basis for the Plaintiff's first amendment facial overbreadth challenge to the ordinance. *See infra* at 594.

7. As the Court intends to address the first amendment issues below, the Court will at this point consider only whether the ordinance as written has a sufficiently particular meaning to avoid unconstitutional vagueness. However, the Court bears in mind that the existence of first amendment issues colors this analysis with the expectation of a somewhat higher standard of specificity than is normally required.

nevertheless, it does indicate to some extent that the ordinance may be capable of being understood by ordinary persons.

■ Whatever the interpretation given by others, the root of the vagueness analysis must be in the words of the ordinance itself. Because the Court is satisfied that the words of the ordinance provide a clear exposition of what conduct is proscribed, the Plaintiff's vagueness argument must fail. *See Grayned*, 408 U.S. at 110, 92 S.Ct. at 2300 ("[W]e think it is clear what the ordinance as a whole prohibits.").

■ It must first be noted that the terms "mingle" and "fraternize" must be read in context with subparagraphs (a) through (d), which clearly and unambiguously proscribe solicitation of drinks and other acts attendant to such solicitation. Such construction of facially imprecise terms in light of other closely related provisions is a proper exercise of interpretation. *See Cole*, 405 U.S. at 683–4, 92 S.Ct. at 1336–7. It seems obvious under this interpretation that mingling and fraternizing are prohibited only to the extent that such activity facilitates or actually involves the outlawed solicitation of drinks.

Further, contrary to the argument of the Plaintiff, the terms "mingle" and "fraternize" do have a precise meaning. To mingle is "to associate or unite, as things by interspersion or persons by ties of relationship; to join company." *City of New Orleans v. Kiefer*, 246 La. 305, 164 So.2d 336, 339 (1964). *See also People v. King*, 115 Cal.App.2d Supp. 875, 252 P.2d 78, 80 (1952). To fraternize is "to associate or *mingle* as brothers or on fraternal terms." *See Webster's New International Dictionary* 903–4 (3d ed. 1966). Thus, the prohibition against mingling or fraternizing simply means that employees in licensed establishments are not permitted to join company with patrons. *Accord Kiefer*, 164 So.2d at 339; *King*, 252 P.2d at 80–1. This is sufficiently clear to apprise employees of what conduct is unlawful, and it is explicit enough to prevent discriminatory enforcement by City policemen. The Court there-

fore finds that subparagraph (e) is not unconstitutionally vague.

A reading of the entire solicitation ordinance makes quite clear what type of conduct the City is attempting to regulate. Accordingly, the Court concludes that the ordinance does not threaten to deny the Plaintiff or its employees due process of law by reason of vagueness.

### C.

The Plaintiff's first amendment challenge to the solicitation ordinance is founded upon the assertion that the ordinance prohibits forms of speech protected by the first amendment. While it is perhaps arguable that the provisions prohibiting solicitation curtail only conduct, the Court is satisfied that the act of solicitation contemplates a sufficient speech component to subject the ordinance to first amendment scrutiny. Thus, the Court concludes that the ordinance must not unduly burden the Plaintiff's first amendment rights if it is to withstand constitutional challenge.

■ The Court is again faced with the City's contention that the Plaintiff lacks standing to assert the constitutional right of its employees and patrons. The Plaintiff argues that the first amendment doctrine of facial overbreadth permits the Plaintiff to assert such rights. With this general proposition the Court agrees. *E.g., Young v. American Mini Theaters*, 427 U.S. 50, 59–60, 96 S.Ct. 2440, 2446–47, 49 L.Ed.2d 310 (1976), *reh. denied* 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976); *Broadrick v. Oklahoma*, 413 U.S. 601, 611–4, 93 S.Ct. 2908, 2915–7, 37 L.Ed.2d 830 (1973). However, as the City notes, facial overbreadth has no application in the context of commercial speech. *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 462 n. 20, 98 S.Ct. 1912, 1922 n. 20, 56 L.Ed.2d 444 (1978); *Bates v. State Bar of Arizona*, 433 U.S. 350, 380, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 (1977); *Olitsky v. O'Malley*, 597 F.2d 295, 303 (1st Cir.1979). *See also Friedman v. Rogers*, 440 U.S. 1, 10 n. 9, 99 S.Ct. 887, 894 n. 9, 59 L.Ed.2d 100 (1979). This is so because "[t]he Con-

stitution ... accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Central Hudson Gas v. Public Service Commission,* 447 U.S. 557, 562–3, 100 S.Ct. 2343, 2349–50, 65 L.Ed.2d 341 (1980), *citing Ohralik,* 436 U.S. at 456–7, 98 S.Ct. at 1918–9. Thus, while the Plaintiff is entitled to assert the first amendment rights of its employees because it can speak only through its employees, the Plaintiff's ability to assert the first amendment rights of its patrons depends upon whether the ordinance proscribes commercial speech, or "other constitutionally guaranteed expression." [8]

Commercial speech is defined as that which does "no more than propose a commercial transaction." *Pittsburgh Press Co. v. Human Relations Commission,* 413 U.S. 376, 385, 93 S.Ct. 2553, 2558, 37 L.Ed.2d 669 (1973). *See also Friedman v. Rogers,* 440 U.S. at 10 n. 9, 99 S.Ct. at 894 n. 9. While the Court is satisfied that the provisions proscribing solicitation thus regulate commercial speech, it is clear that subparagraph (e) may well limit noncommercial, protected speech. The Court will therefore give subparagraph (e) separate analysis after considering the first amendment challenge to the solicitation provisions.

▮ In *Central Hudson Gas,* the Supreme Court prescribed the four part test by which to measure attempted regulation of commercial speech: (1) the commercial speech must be protected by the first amendment in the sense that it is neither false nor misleading, and that it concerns lawful activity; (2) the governmental interest protected by the ordinance must be substantial; (3) the regulation must directly advance the governmental interest asserted; and, (4) the regulation must not be more extensive than is necessary to serve that interest. 447 U.S. at 566, 100 S.Ct. at 2351. Thus, the solicitation provisions of the City ordinance must be measured against these requirements.

▮ The Court concludes that the solicitation ordinance passes this test. First, while there is evidence to suggest that the solicitation contemplated by the ordinance is misleading and concerns unlawful activity,[9] the Court is satisfied that some acts of solicitation of drinks neither mislead the patron nor concern unlawful conduct. Second, as the Court has noted above, the City has a substantial interest in curtailing "B girl" operations, which is the express purpose of the ordinance. Third, as has also been noted above, prohibiting solicitation of drinks by employees directly furthers the City's interest in curtailing "B girl" operations. Finally, the Court finds that the ordinance does not exceed the limits necessary to curtail "B girl" operations. Indeed, the Court is at a loss to explain how the City could prevent the operation without criminalizing the solicitation of drinks. Thus, the Court is satisfied that the solicitation provisions of the ordinance, subparagraphs (a) through (d), do not impermissibly burden first amendment rights.[10]

---

**8.** There is perhaps little reason to belabor the standing issue in the first amendment analysis of the first four subparagraphs of the ordinance. It is highly unlikely that these provisions prevent any speech by a patron, as they merely prevent solicitation and related activities by employees. Thus, the Plaintiff's inability to assert the rights of its patrons stems from the fact that no rights are infringed rather than a lack of standing. *See supra* at 590. However, the distinction between commercial speech and fully protected speech is relevant to the test to be applied to the regulation. *See infra* at 593, 594.

**9.** The evidence presented at trial indicates that the solicitations are often made upon the implied promise of sexual favors. Such promises may well prove to be misleading but assuming *arguendo* that they do not, they promote the illegal activity of prostitution. Further, the evidence indicates that the patron is often misled in that he anticipates that the drinks he purchases for an employee will be sold at regular price, when in fact, as the patron later discovers, he is charged an exorbitant price for the drinks.

**10.** Further, the regulation is not excessive in that it unduly burdens the free speech rights of the Plaintiff's patrons. *See infra* at 594–595. This conclusion disposes of the Plaintiff's first amendment challenge to the first four subparagraphs on behalf of its patrons, assuming *arguendo* that the first four subparagraphs curtail any speech by the Plaintiff's patrons. *See supra* at 593 n. 8.

With respect to the solicitation provisions of the ordinance, the Plaintiff offers one last challenge focusing on subparagraph (b), which prohibits the serving "to any employee any alcoholic or non-alcoholic beverage which was purchased by any patron." The Plaintiff asserts that this provision is overbroad in that it prohibits a patron from voluntarily purchasing a drink for an employee if he chooses on his own to do so. The Plaintiff here makes not the first amendment facial overbreadth challenge, which the Court has already found inapplicable to subparagraphs (a) through (d), but instead the overbreadth challenge that the ordinance proscribes conduct in a way that does not further the City's interest in curtailing "B girl" operations. *See Ohralik*, 436 U.S. at 462 n. 20, 98 S.Ct. at 1922 n. 20. Thus, the Plaintiff essentially argues that subparagraph (b) fails to meet the third and fourth elements of the *Central Hudson Gas* test. Assuming *arguendo* that the Plaintiff has standing to make such an assertion, *cf. Gooding v. Wilson*, 405 U.S. 518, 521, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972), the Court finds it without merit because subparagraph (b) does not prohibit the patrons of the Plaintiff from voluntarily purchasing a drink for an employee at the patron's election. As has been noted above, the provisions of the ordinance must be read as an organic whole rather than as individual subparagraphs. *Cf. Cole v. Richardson*, 397 U.S. 238, 240, 90 S.Ct. 1099, 1100, 25 L.Ed.2d 275 (1970) (Harlan, J. concurring) ("[A]lmost any word or phrase may be rendered vague or ambiguous by dissection with a semantic scalpel.") Viewed in this context, subparagraph (b) prevents serving a drink purchased by a patron to an employee only if the drink has been solicited by an employee. This interpretation is borne out by the testimony of a City police officer, who testified that he would not consider it a violation of the ordinance for a patron to purchase a beer, for example, for the bartender. While the officer's understanding of the ordinance is not controlling, it does suggest that any possible overbreadth is cured by construction of the ordinance given by those who will enforce it. Thus, the Court concludes that the ordinance does not prohibit voluntary purchases of drinks by patrons for employees, in the absence of a solicitation by an employee. *Accord, City of Miami v. Kayfetz*, 92 So.2d 798, 803 (Fla.1957).

The last provision of the solicitation ordinance, subparagraph (e), must meet a more stringent first amendment test than do the first four subparagraphs. Nevertheless, the Plaintiff is not entitled to the full blown facial overbreadth challenge to the ordinance, as such a challenge is reserved for regulations of pure protected speech. Rather, the Plaintiff is entitled to challenge the ordinance's last provision only as a regulation of a combination of conduct and protected speech. *See Broadrick*, 413 U.S. at 615, 93 S.Ct. at 2917 (Distinguishing between pure speech and the combination of speech and conduct). Thus, subparagraph (e) must be evaluated in light of the test prescribed by *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), which has the following requirements: (1) that the regulation be within the governmental agency's power to promulgate; (2) that the regulation furthers an important or substantial governmental interest; (3) that the governmental interest is unrelated to the suppression of free expression; and, (4) that the restriction on first amendment rights is no greater than is necessary to further that interest. 391 U.S. at 377, 88 S.Ct. at 1679.

The Court is satisfied that subparagraph (e) meets the *O'Brien* standard. First, as has been noted, it is well within the City's power to promulgate this ordinance. Second, as the Court has noted twice before, the ordinance in general and subparagraph (e) in particular advance the substantial governmental interest in curtailing "B girl" operations. Third, it is quite clear that regulation of "B girl" activity is wholly unrelated to the suppression of free expression. The ordinance does not purport to prohibit speech in general, but only such speech as is incident to solicitation or mingling, speech forms which promote "B girl"

operations. Fourth, the Court finds that the incidental restrictions on first amendment rights are no greater than are necessary to advance the City's interest. The evidence presented at trial indicate that the ordinance would be virtually useless if it did not include the prohibition against mingling and fraternizing. This is so because "B girl" operations flourish only where the employees are permitted to join company or "mingle" with the patrons. And, contrary to the assertions of the Plaintiff, subparagraph (e) does not prohibit the exchange of pleasantries or even light conversation with patrons, as the employees are prohibited from doing so only in the context of mingling or fraternizing. This interpretation of subparagraph (e) is borne out by the testimony of a City police officer, who testified that he did not consider it a violation of the ordinance for an employee to engage in conversation with a patron. As has been noted before, the interpretation given by the City police officer is not controlling, but it does indicate that a reasonable reading of the ordinance by persons of ordinary intelligence does not reveal that it is overbroad. And subparagraph (e) itself provides that no speech is prohibited by the ordinance so long as the employee is "performing the duties in the furtherance of service of food and/or drinks." It is thus quite clear that the ordinance is narrowly enough drawn to proscribe only such speech as is necessary to curtail "B girl" operations. As in the case of subparagraphs (a) through (d), the Court concludes that subparagraph (e) complies with the requirements of the first amendment.

## IV.

In summary, it is the opinion of the Court that the City's solicitation ordinance contravenes neither Oklahoma statutory law nor the United States Constitution. The City is therefore entitled to prevail on the Plaintiff's claim for declaratory and injunctive relief. Accordingly, judgment will be entered in favor of the City of Oklahoma City in this action.